THE CONCORDIA CEMETERY ASSOCIATION

*v.*

THE MINNESOTA AND NORTHWESTERN RAILROAD COMPANY.

*Filed at Ottawa June 17, 1887.*

1. EMINENT DOMAIN—*measure of damages—as to land claimed to be
held for cemetery purposes.* If property sought to be condemned by a rail-
way company for a right of way is claimed by a cemetery company, it may be
shown, on the question of the compensation and damages, that the land is
not used for burial purposes, and is not susceptible of being used for ceme-
tery purposes. The owner of the land is entitled to have the highest price
for which the same can be sold for any purpose.

2. SAME—*comparative values, as aiding in fixing the measure of dam-
ages.* Evidence in regard to sales of prairie land one mile distant from the
land sought to be condemned for a right of way, may be received, as tending,
in some measure, to show the value of the land involved, when there is no
evidence of any actual present market value, nor of sales of like property
nearer. When the land sought to be taken is not laid out into lots, and im-
proved as cemetery property, proof of sales of lots in other cemeteries is not
competent evidence on the assessment.

3. SAME—*benefits, when to be considered.* It is competent to consider
special benefits to property claimed to be damaged, but not taken, for the
purpose of reducing, or, rather, to the extent of the special benefits, of show-
ing that there are no damages.

4. SAME—*an instruction construed, as to the application of benefits.*
In a proceeding for the condemnation of a right of way, the court instructed

the jury that the defendant was entitled, as compensation, to the cash market value of his land sought to be taken, as of the date of the petition, and damages to the remainder of his land described in his cross-petition, and then instructed that the total compensation and damages to which the defendant was entitled, must be equal to, but must not exceed, the difference between the fair market value of the whole land described in the petition and cross-petition, as it was on the date of the petition, and the fair market value of what remains after the taking of part by the petitioner and the appropriation thereof to its use. The jury awarded $2380 for the land taken, and $6450 for damages to land not taken: *Held,* that it must be presumed that the $6450 was in excess of any and all special benefits to the lands damaged and not taken, and consequently that no benefits were allowed against the value of the land taken.

5. SAME—*to what time the finding of compensation, etc., should relate.* The value of the property taken, and the damages to that not taken, are to be assessed as of the date of the filing of the petition. The taking and damaging, in theory, are then done, and it is the value of the property as then presumably enhanced by the prospective benefits to result from the construction of the road, which the owner is entitled to be reimbursed, to the extent he has been deprived of it by the taking and damaging.

6. SAME—*submitting several cases to same jury.* Under the statute, the compensation may be assessed by the same or different juries, as to two or more separate tracts of land described in the same petition, although belonging to different owners. This is a matter within the discretion of the trial court, and unless such discretion is shown to have been abused, it will not be interfered with.

7. ORDINANCE—*improper discrimination as to persons to be affected.* An ordinance making improper discriminations between different persons or corporations similarly situated, there being nothing, in the nature of things, requiring such difference, is unreasonable, and therefore will not be enforced.

8. CEMETERIES—*boundaries, how fixed—and whether land acquired becomes a part of a cemetery.* A town ordinance provided that the boundaries of all cemeteries within the corporate limits, which were not inclosed, should be the same as then appeared of record in the maps, plats or deeds thereof. Under such an ordinance, a deed conveying land as a cemetery, on its face being a dedication of it as a cemetery, would prescribe and fix its boundaries; but a deed of land to a corporation empowered to buy and sell land for burial purposes, is not, *ipso facto,* a deed creating a cemetery, and prescribing its boundaries.

9. The mere acquisition of title to lands by a cemetery company before they are platted and laid out as such, will not make the same a part of a cemetery. Such lands, until actually prepared and devoted to burial purposes, do not become a part of a cemetery by merely being within the same inclosure.

10. CORPORATIONS—*hold their franchises subject to the police power.* All corporations accept their franchises subject to regulation under the police power; and it is competent under that power, in proper cases, to regulate or restrain burials of the dead within villages or cities.

11. ERROR—*when working no injury.* The refusal to give a proper instruction will not call for a reversal of a judgment, when every legal proposition asked therein has been given in other instructions; and the same rule applies where the instruction is so modified as to amount to a refusal of its propositions, but contains no inaccurate rule of law.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding. Bill of exceptions signed by LORIN C. COLLINS, by stipulation, owing to the death of the trial judge.

Mr. MARTIN BEEM, Mr. CARLOS P. SAWYER, and Mr. R. S. THOMPSON, for the appellant:

The court erred in giving to the jury petitioner's fourth instruction, and in modification of petitioner's first instruction. Starr & Curtis' Stat. chap. 47, par. 9; *Page* v. *Railway Co.* 70 Ill. 324; *Carpenter* v. *Jennings,* 77 id. 250; *Green* v. *City of Chicago,* 97 id. 372; Mills on Eminent Domain, secs. 174, 162; *Railroad Co.* v. *Black,* 58 Ill. 33; *Railroad Co.* v. *Henry,* 79 id. 290; *McReynolds* v. *Railroad Co.* 106 id. 152; *Todd* v. *Railroad Co.* 78 id. 530; *Railroad Co.* v. *Blake,* 116 id. 169; *Wilson* v. *Railroad Co.* 59 id. 275; *Railroad Co.* v. *Laurie,* 63 id. 268.

The court erred in giving to the jury petitioner's sixth instruction, marked seventh. *Hankins* v. *People,* 106 Ill. 632; Potter's Dwarris, p. 146, sec. 21, and pp. 458, 471, sec. 120, note; *Bruffett* v. *Railroad Co.* 25 Ill. 310; Potter's Dwarris, p. 111, note 8; *Lake View* v. *Cemetery Co.* 70 Ill. 191; Mills on Eminent Domain, sec. 170; *Railroad Co.* v. *Catholic Bishop,* 119 Ill. 525; *Railroad Co.* v. *Jacobs,* 110 id. 414; *Johnson* v. *Railway Co.* 111 id. 413.

The court erred in refusing to give defendant's fifth instruction as asked, and in modifying the same, and in giving

the same as so modified. *Jones* v. *Railroad Co.* 68 Ill. 383; *Railroad Co.* v. *Hopkins,* 90 id. 322; *Railroad Co.* v. *Maffett,* 59 id. 237; *Railway Co.* v. *Railroad Co.* 100 id. 21; Const. 1870, art. 2, sec. 13; *Town of Earlville* v. *Carter,* 2 Bradw. 34; *Railroad Co.* v. *Henry,* 79 Ill. 292; *Morgan* v. *Peet,* 32 id. 288; *Railroad Co.* v. *Catholic Bishop,* 119 id. 525; *Haslam* v. *Railroad Co.* 64 id. 355; *Insurance Co.* v. *Robinson,* 98 id. 331.

The court erred in allowing the jury, during the trial, to be sworn to assess damages and compensation to be paid another party defendant for his land, in giving them instructions therein, and in allowing them to hear evidence and render a verdict therein, where there was no contest as to the amount to be awarded. *Johnson* v. *Railroad Co.* 116 Ill. 525.

The evidence having been highly conflicting as to the controverted facts and issues, the several instructions should have been accurate. *Ruff* v. *Jarrett,* 94 Ill. 475; *Railway Co.* v. *Henks,* 91 id. 406; *Swan* v. *People,* 98 id. 610; *Railroad Co.* v. *Maffit,* 67 id. 431; *Railroad Co.* v. *McMath,* 4 Bradw. 356.

When the jury have been instructed upon a wrong theory, it is ground for reversal. *Green* v. *Chicago,* 97 Ill. 373.

Messrs. GARDNER, MCFADEN & GARDNER, for the appellee:

A strip of land one hundred feet wide, in the location of this cemetery, would not be of any particular value by itself. Its increased value arises from the fact that it is connected with the balance of the land, and forms a part thereof. *Railroad Co.* v. *Blake,* 116 Ill. 163.

Even if said fourth instruction was erroneous, as authorizing the jury to deduct benefits from compensation, yet as the jury in fact found that there were no benefits, therefore they were not misled by the instruction, and the Supreme Court will not reverse for error therein. *Davenport* v. *Ryan,* 81 Ill. 218; *Race* v. *Oldridge,* 90 id. 250; *Beard* v. *Maxwell,* 113 id. 440.

The village board had the authority to pass the ordinance. *Coates* v. *Mayor,* 7 Cow. 584; *Brick Church* v. *New York,* 5 id. 538; *Kincaid's Appeal,* 66 Pa. St. 411.

In an eminent domain proceeding, all evidence is admissible which tends to establish the cash market value of the land at the time the petition was filed, for the best use to which it was then adapted; but evidence tending to establish a remote and speculative value in the future is improper. *Railway Co.* v. *Walsh,* 106 Ill. 253; *Dupuis* v. *Railway Co.* 115 id. 197.

The same jury may assess the compensation and damages of several distinct tracts and owners. *Bowman* v. *Railroad Co.* 102 Ill. 465; Mills on Eminent Domain, sec. 267.

Again, the court has a very large discretion in deciding what evidence of sales of similar land is admissible, and the Supreme Court will not reverse for this reason unless he grossly abused his discretion. *Watson* v. *Railroad Co.* 57 Wis. 332, and cases cited; *Washburn* v. *Railroad Co.* 59 id. 364.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This proceeding was commenced by petition, filed in the court below, by the Minnesota and Northwestern Railroad Company, to condemn, for its right of way, a strip of land one hundred feet in width, across certain lands belonging to appellant, in the village of Harlem, in Cook county. Appellant filed a cross-petition in the proceeding, alleging therein that the strip of land proposed to be condemned was a part of a larger tract acquired and held by it for burial purposes, and claiming damages to that portion of the tract not taken. A trial was had, and the jury returned a verdict awarding to appellant $2380 as compensation for the land taken, and $6450 as damages to the land not taken, upon which the court, after overruling a motion for a new trial, rendered judgment. Appellant brings the record here, and insists that the court below erred in its rulings on the trial, to the

prejudice of appellant, in the several respects hereinafter considered.

*First*—The first and fourth instructions given to the jury, at the instance of the petitioner, are as follows:

"1.  The jury are instructed, as a matter of law, that defendant is entitled, as compensation, to the cash market value of its land proposed to be taken by the railroad on September 6, 1886.   The defendant is also entitled to damages to the remainder of its land, described in the cross-petition, which will be caused by the construction and operation of the railroad.

"4.  The jury are instructed that the total compensation and damages to which the defendant is entitled, under the first instruction, must be equal to, but must not exceed, the difference between the fair market value of the whole land described in the petition and cross-petition, as it was on September 6, 1886, and the fair market value of what remains after the taking of part by the railroad company, and the appropriation thereof to its use."

It is contended that this directed the jury to deduct any benefits which the railroad might cause to the remainder of the land, from the value of the strip taken.  This, it is obvious, could only be true in the event that the benefits exceeded the damages to the land not taken.  We have held it is competent to consider special benefits to property claimed to be damaged but not taken, for the purpose of reducing, or, rather, to the extent of the special benefits, of showing that there are no damages.   *Page et al.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 70 Ill. 328; *Chicago and Pacific Railroad Co.* v. *Francis,* id. 238; *Todd* v. *Kankakee and Illinois River Railroad Co.* 78 id. 530; *Chicago, Milwaukee and St. Paul Railroad Co.* v. *Hall,* 90 id. 42; *McReynolds* v. *Burlington and Ohio River Railway Co.* 106 id. 152.

We have seen that the verdict here finds the value of the land taken to be $2380, and the damages to lands not taken

to be $6450, and it is therefore to be presumed that this $6450 is in excess of any and all special benefits to the lands damaged and not taken. Assuming the damages to exceed the benefits in the respect stated, "the difference between the fair market value of the whole land described in the petition and cross-petition, as it was on September 6, 1886, and the fair market value of what remains after the taking of part by the railroad company and the appropriation thereof to its use," makes appellant whole,—gives it, presumptively, the same money values, notwithstanding the taking, that it would have had, had its land not been taken and damaged, for it gets the value of its land, as of the date of the taking, and the damages it sustains, (the extent of its injuries over its benefits,) to its property not taken. *Green* v. *Chicago*, 97 Ill. 370.

The parties agree that the value of the property taken and the damages to the property not taken, should be assessed as of the date of filing the petition. And this being so, there can be no presumption that general benefits have been deducted from the valuation. The taking and damaging are, in theory, then done, and it is the value of the property, as then presumably enhanced by the prospective benefits to result from the construction of the road, which the owner is entitled to be reimbursed, to the extent he has been deprived of it by the taking and damaging.

*Second*—Appellant is a corporation organized under the general law, to buy and sell real estate for burial purposes. It owns real estate conveyed to it by deeds conveying the title generally, without specifying the purpose. Its real estate, including that here taken and damaged, lies within the limits of Harlem, in Cook county, a village incorporated under the general law. The following ordinances of the village were duly adopted, at the date annexed, and thence hitherto have remained, and still are, in force, as ordinances of the village, namely:

"CEMETERIES.

"*Be it ordained by the President and Board of Trustees of the Village of Harlem:*

"SECTION 1. That no corpse shall be interred in any place within the limits of the village of Harlem not actually used as a cemetery on the 1st day of October, 1884, or lying within the enclosure of a cemetery not established on or before said day, except as hereinafter provided.

"Sec. 2. No corporation, or person or persons, shall establish or open any cemetery within the limits of the village of Harlem, unless the board of trustees of said village of Harlem shall first fix and determine the location of such cemetery, and fix the boundaries thereto.

"Sec. 3. The boundaries of all cemeteries within the limits of the village of Harlem are hereby fixed at the enclosures now surrounding any such cemeteries; and the boundaries of such cemeteries as are not enclosed, shall be the same as now appear of record in the maps, plats or deeds of such cemeteries.

"Sec. 4. No corporation, person or persons, shall enlarge the boundaries of any cemetery within the limits of the village of Harlem, as the same are now recorded, unless the board of trustees shall fix and determine the boundaries of any cemetery so to be enlarged.

"Sec. 5. It shall be lawful to inter dead bodies within the limits of any cemetery established and used as a cemetery on the 1st day of October, 1884, under such rules and regulations as may, from time to time, be made by the board of trustees; but the burial of any corpse outside of such limits, and within said village of Harlem, shall be deemed a violation of sections 1 and 2 of this ordinance.

"Sec. 6. If any person shall violate any of the provisions of this ordinance, he shall be fined, on conviction thereof, not exceeding $100, or imprisoned not exceeding three months, or both, in the discretion of the court. It shall be lawful for

the court to order the offender to disinter any and all dead bodies that he may be proven to have buried contrary to the provisions of this ordinance, and to enforce obedience to such order by fines or imprisonment, or both. It shall be lawful for any person, under the direction of the board of trustees, to disinter any corpse buried contrary to the provisions of this ordinance, and to remove and re-inter the same within the lawful bounds of any cemetery.

"Passed October 11, 1884.—Approved October 14, 1884.
LEO G. HAASE, *Village Clerk.*
J. H. C. SCHROEDER, *President.*"

It was agreed, for the purposes of this trial, that in October, A. D. 1884, the following described fences were the only fences on the property of said defendant, described in its cross-petition herein: "From the north-east corner of said 'west four acres of lot two (2,)' extending west along the north line of defendant's property, on Madison street, to within twenty (20) feet of the Desplaines river, said fence being a picket fence; thence a similar fence, in a curving line, skirting the said river southerly, to a point about three hundred and thirty-eight (338) feet north of said petitioner's proposed right of way, thence in an easterly direction to the western line of said lot three (3.) A similar picket fence on the extreme southern boundary of said defendant's said property, separating the same from Waldheim cemetery, and extending from the Desplaines river in a direct line east, along the line of said Waldheim cemetery. A fence extending from the south-east corner of lot 6 of said defendant's property, in a northerly direction, along the east line of said lot six (6) and of said lot three (3,) to the north-east corner of said lot three (3,) thence in a westerly direction along the north line of said lot three (3) to the south-east corner of said west four acres of lot two (2,) thence north along the east line of said west four acres of said lot two (2) to Madison street. Also,

a fence extending from the north-west corner of said west four acres of lot two (2,) at its intersection with Madison street, in a southerly direction, along the west line of said west four acres, for about two-thirds the length of said west line of said west four acres; thence in an easterly direction to the east line of said west four acres of lot two (2.)" This will be more intelligible by reference to the annexed map:

The evidence shows that the grounds laid out into cemetery lots and improved for cemetery purposes on the 1st day

of October, 1884, were all on the north side of the fence described as running east from a point about 338 feet north of the petitioner's proposed right of way, thence in an easterly direction to the western line of lot 3, which lot did not then, but does now, belong to the appellant. There seem to have been two graves of children on or near the right of way, put there, not in good faith, as an extension of the cemetery, but after notice of the survey of petitioner's line, under and because of legal advice then given.

The court instructed the jury, at the instance of appellee, that "under the ordinance of the village of Harlem, offered in evidence, the cemetery association, defendant, had no right to bury any dead on the land described in the petition, unless at the time of its passage said land was actually used as a cemetery, or inclosed within the grounds of the association. If the jury believe, from the evidence, that at the time of the passage of the ordinance said land was not so used or so enclosed, then the jury are instructed, that in determining the market value of the land proposed to be taken, for the purpose of assessing the compensation, its value for cemetery purposes is not to be considered by the jury."

It is contended that this instruction ought not to have been given,—that its effect is to mislead, because, under the ordinances of the village, it was sufficient (this cemetery not being enclosed) that its boundaries were co-extensive with the deeds to appellant. We are unable to yield our assent to this construction. We can not assume that the village trustees intended to apply different rules, in this respect, to different cemeteries, unless there was something in the nature of things requiring such difference, because such a discrimination would be unreasonable and unjust, and the ordinances could not, therefore, be enforced. Cooley's Const. Lim. (6th ed.) 200, 201. There can be no reason why a corporation having grounds, some enclosed and some unenclosed, should be restricted in the use of its grounds more than a corporation

14—121 ILL.

not having any of its grounds enclosed, or why a corporation which has platted some of its lands should be more restricted than a corporation which has made no plat. The language of the ordinance here is, not that the boundaries shall, in any instance, be co-extensive with the lands owned,—as, if that had been intended, it is reasonable to assume would have been said,—it is: "The boundaries of all cemeteries * ₌* * are hereby fixed at the enclosures now surrounding any such cemeteries, and the boundaries of such cemeteries as are not enclosed shall be the same as now appear of record in the map, plat, or deeds of such cemeteries,"—that is, of course, assuming that there is a map, plat or deed showing a boundary of a cemetery. And so a deed of a described tract of land conveying it as a cemetery, would be a dedication of it as a cemetery, and prescribe the boundaries of the cemetery. But, manifestly, a deed of land to a corporation empowered to buy and sell land for burial purposes, is not, *ipso facto*, a deed creating a cemetery and prescribing its boundaries. Such a corporation has a discretion when to lay out its grounds for cemetery purposes, as well as how, and until its lands are laid out and opened to the public as a cemetery, they are, simply, lands belonging to a cemetery corporation. Such corporations, in order to get the requisite lands, may, unavoidably, be compelled to buy some other lands not adapted to cemetery purposes, and when they do so, such lands may be sold by the corporation without even becoming a part of any cemetery. The manifest purpose here was, to declare the boundaries of cemeteries to be the limits of lands actually prepared and devoted to burial purposes. Lands not devoted to burial purposes would not become a part of the cemetery by merely being within the same enclosure, for the language is not "the enclosures now surrounding the lands of the person or corporation owning the cemetery," but "the enclosures now surrounding any such cemeteries." The word "cemetery," is defined by Webster to be "a place or ground set apart

for the burial of the dead," and this is the popular idea. What creates the cemetery is the act of setting the ground apart for the burial of the dead, marking it, and distinguishing it from the adjoining ground, as a place of burial. That the ground taken by appellee has never been set apart, in any way, for burial purposes, is proved beyond doubt.

The evidence shows, that before burials are allowed on grounds belonging to appellant, the grounds are laid off and improved for cemetery purposes, and then appellant sells burial lots and single graves to parties desiring to purchase. And evidence was given by Leopold Brauns, appellant's president and treasurer, as to the value of such lots and graves, for the purpose of showing the value of the land here taken, etc., when the following questions were asked, and answers thereto given :

Q. "Could you sell lots to-day at any price, at the point where this railroad crosses the cemetery grounds, or the grounds belonging to the cemetery company, at any price ?

A. "If we had laid out our sections we could.

Q. "I mean, as it stands to-day, could you sell cemetery lots down there, at any price ?

A. "We haven't any ; we have to have them first before we can sell them. We have to lay them out in sections."

We think the court properly construed the ordinance.

But counsel again contend, that this construction is to declare a partial or total forfeiture of appellant's franchise, because if not permitted to use this ground for burial purposes, it is wholly deprived of the use of its property. This is a misapprehension. Lands belonging to cemetery associations incorporated under the laws of this State, not suitable or required for burial purposes, may be sold under the provisions of the act approved May 15, 1875. (Public Laws of 1875, pp. 40, 41.) All corporations accept their franchises subject to regulation under the police power. Cooley's Const. Lim. (1st ed.) p. 574, *et seq.*, and note. And it is competent,

under that power, in proper cases, to regulate or restrain burials within villages and cities, etc. (Id. p. 595.) The present case does not involve the question decided in *Lake View* v. *Rose Hill Cemetery*, 70 Ill. 195. In that case it was affirmatively shown that the lands were at a proper distance from the populous part of the city, in a sparsely settled community, and that there were but few dwellings in the vicinity. No such facts are here shown. It was there conceded that the matter of burials was a proper subject of municipal regulation.

*Third*—It is contended the court erred in allowing the jury, during the trial, to be sworn to assess, and to hear evidence and assess, damages as to other parties. It is provided by section 5, of chapter 47, of the Revised Statutes of 1874, entitled "Eminent Domain," that "any number of separate parcels of property, situate in the same county, may be included in one petition, and the compensation for each shall be assessed separately, by the same or different juries, as the court or judge may direct." We are unable to say, from anything before us, that the court abused the discretion thus conferred.

*Fourth*—It is objected that the court erred in allowing witnesses to testify as to the value of property not used, or susceptible of being used, for cemetery purposes. But if we are right in holding that the court properly construed the village ordinance, this property is not susceptible of that use. We have carefully considered all the evidence, and while much latitude was allowed on both sides in examining witnesses as to the value of the property taken, and the damage to that not taken, we can not say there was error. Appellant was entitled to have the highest price for which the property could be sold for any purpose, and that idea was, on the whole, kept in view.

*Fifth*—We can not say that evidence in regard to sales of prairie land one mile distant, was incompetent, as not tend-

ing, in any measure, to show value, there being no evidence of an actual present market value of this particular property, nor of sales of like property nearer, under circumstances which would be conclusive of the question of value.

*Sixth*—Sales of lots in other cemeteries are claimed to have been competent evidence. We think not, because this property was not laid off into lots and improved as cemetery property.

*Seventh*—Objection is made to the modification of appellant's fifth instruction. The modification was undoubtedly improper. It was, in fact, a refusal to give appellant's proposition; and the instruction, as modified, while stating no rule of law inaccurately, was wholly irrelevant to the case. But every legal proposition which appellant asked to have given in his fifth instruction, was given in substance, and with sufficient fullness, in his fourth and seventh instructions, and he could not have been injured by not having them repeated.

*Eighth*—It is contended the verdict is contrary to the evidence. We do not think so. While the jury might have been justified in giving a larger sum, we can not say they erred in not doing so. No improvements are affected by this taking, the land taken, and that in its immediate vicinity, being still in a state of nature; and it is only by a system of conjectures as to future probabilities, that appellant figures up a sum for compensation in excess of that returned by the jury. There can be no present certainty as to the data upon which these calculations rest, and they are, therefore, not a proper basis for a verdict.

The judgment is affirmed.

*Judgment affirmed.*