# CASES

ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

(No. 13853.—Reversed and remanded.)

THE FOREST PRESERVE DISTRICT OF COOK COUNTY, Appellant, *vs.* PATRICK H. CARAHER *et al.* Appellees.

*Opinion filed June 22, 1921—Rehearing denied October 6, 1921.*

1. EMINENT DOMAIN—*evidence of sales of neighboring property is competent.* Land has no fixed market value, as no two tracts are exactly alike and no improved lands are exactly alike in improvements, and in a condemnation proceeding actual sales of similar property in the vicinity and sufficiently near the time of the inquiry are competent evidence.

2. SAME—*what preliminary proof is essential before admitting evidence of sales of neighboring property.* Before admitting evidence of voluntary sales of lands in the vicinity of property involved in a condemnation proceeding the party offering the proof must first show that the lands so sold were similar to the land in question as to locality and character, and permitting evidence of sales of dissimilar property to go to the jury can only lead to the investigation of numerous collateral issues and tend to mislead the jury.

3. SAME—*extent to which admissibility of evidence of sales of neighboring property rests in discretion of trial judge.* While the question whether evidence of sales of neighboring property is ad-

missible in a condemnation proceeding rests largely in the discretion of the trial judge, such discretion does not go to the extent of admitting evidence which will be of no aid to the jury in determining the question of value, but is limited to deciding whether or not the property so sold is similar to that condemned as to quality, nature, improvements or other characteristics.

4. SAME—*the owner is entitled to show differences between his property and property sold.* Where evidence of the sale of neighboring property is admitted in a condemnation proceeding, the owner of the land sought to be condemned is entitled to show such facts as will enable the jury to understand the differences between his property and that which has been sold.

5. SAME—*mere proximity is not a test to determine value of evidence of sale of neighboring property.* Mere proximity is not a test to determine the value of evidence of the sale of neighboring property in a condemnation proceeding, as the most valuable, fertile and attractive piece of property with the most valuable improvements may be near to barren, unproductive and unattractive land.

6. SAME—*what evidence of possibility of use of land in lumber business is not admissible.* Where property is sought to be condemned for a forest preserve district, testimony of an expert in the lumber business as to what amount could be realized by setting up a sawmill, cutting up the trees and selling the lumber is not admissible, even though the owner has a right to prove what the land is worth taking account of the fact that there is valuable timber on it.

7. SAME—*timber or minerals on land cannot be valued separately.* Compensation must be estimated for the land as land, with all its capabilities, and if there is timber on it, or coal, oil or other minerals under the surface, they are to be considered so far as they affect the value of the land but cannot be valued separately.

8. SAME—*owner may prove existence of anything on the land to enhance its value.* The test as to value includes not only actual uses to which land is applied but its capabilities which add to its value, and if it has a water power and mill site, or anything upon it which materially adds to the value, the owner has a right to show its character and to what extent it enhances the value.

9. SAME—*when petitioner is entitled to instruction to correct error in admission of evidence.* In a proceeding to condemn land for a forest preserve district the petitioner is entitled to an instruction to limit the effect of the improper admission in evidence of the value of the timber when separated from the land, even though the instruction might be, under other circumstances, objectionable in calling the jury's attention to a single item of evidence.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

ADOLPH D. WEINER, EDWIN K. WALKER, CHARLES H. WELLS, and ROSS C. HALL, for appellant.

BUTZ, VON AMMON & MARX, (FREDERIC E. VON AMMON, and FREDERICK Z. MARX, of counsel,) for appellees.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellant filed in the circuit court of Cook county its petition to ascertain the compensation to be paid for 393.73 acres of land lying between One Hundred and Eleventh street and One Hundred and Nineteenth street, about twenty-two miles southwest of the Chicago court house, to be taken for the uses of the forest preserve district. A jury fixed the compensation at $159,448.50, or about $406 an acre, and the court entered judgment on the verdict.

There were about 122.73 acres of fertile, tillable land and 271 acres of forest, covered with native trees of good size and different varieties. Mill creek runs through the tract from north to south and there are about twenty-five springs of water on it. There were three sets of buildings on the tract and it was fenced with barb-wire of four strands. The timber land consists of hills and ravines, and the appellees took the position that the most profitable use of the whole tract was for subdivision into lots of a few acres each for country homes. That position was contested by the appellant, which offered evidence of value on the basis that the land was suitable for farm and pasture purposes. The appellant claimed that the value of the property for subdivision was speculative and the most profitable use to which the property was adapted was ordinary agri-

culture. There was the usual diversity of opinion among the witnesses as to value, the witnesses for the appellant depreciating the value and those for the appellees exaggerating it. The witnesses for the appellant fixed values of $150 to $165 an acre while the witnesses for the appellees estimated it at from $600 to $1000 an acre, so that there was a difference between the highest estimate for the appellant and the lowest for the appellees of $157,200. It is quite evident that if the witnesses for either party had been acting as judges or umpires to fix rights under a sense of duty and responsibility there would not have been so wide a divergence, and, as usual, the jury did not accept the opinions of either.

Counsel for appellees take the position that on the legitimate and competent evidence the verdict was justified and the judgment ought to be affirmed because the verdict was within the range of the evidence, and the opinions of witnesses for the appellant were based on or influenced by evidence of sales of property not similar or comparable with this tract. Where property has a market value that value for property of the class and grade of the property involved in a judicial inquiry fixes value, but lands have no market value and are not classed or graded in such a way that proof of value can be made in that way. No two tracts of land are exact counterparts of each other, and no improved lands are exactly alike in improvements, capabilities or otherwise, and from the very necessities of the case actual sales of property in the vicinity and near the time are competent evidence "as far as they go." (*Culbertson & Blair Packing Co.* v. *City of Chicago,* 111 Ill. 651.) Evidence of voluntary sales of lands in the vicinity and similarly situated is admissible in evidence to aid in estimating the value of the land to be taken, but the party offering the proof must first show that the lands so sold were similar in locality and character to the land in question. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151.)

No positive rule can be laid down as to the degree of simi-
larity or the nearness of time and distance required to make
such sales competent as evidence, and the question must
first be submitted to the trial judge and must rest largely
within his discretion. (*St. Louis and Illinois Belt Railway
v. Guswelle*, 236 Ill. 214.) When it is said that much
must be left to the discretion of the trial judge it must be
understood that the discretion is limited to deciding whether
or not the property is similar in quality, nature, improve-
ments or other characteristic. The discretion is not whether
evidence of sales shall be admitted which will not aid the
jury in determining the value of the property to be taken.
Every piece of property has its advantages and disadvan-
tages and differs in the character of its improvements and
otherwise, and if there are minor differences the owner is
entitled to show such facts as will enable the jury to un-
derstand the differences between the property to be taken
and that which has been sold. (*Chicago and Western In-
diana Railroad Co. v. Heidenreich*, 254 Ill. 231.) Mere
proximity is not a test, since the most valuable, fertile and
attractive piece of property with the most valuable im-
provements may be near to a barren, unproductive and un-
attractive piece of property on one side of it and a slough-
grass and cat-tail swamp on the other. If the evidence of
sales of dissimilar property is permitted to go to the jury
in violation of the rule the judgment must be reversed.
(*Chicago and State Line Railway Co. v. Mines*, 221 Ill.
448.) Evidence of sales of property which is not similar
to the land to be taken can only lead to the investigation
of numerous collateral issues and would certainly tend to
mislead the jury. Even where tracts of land are similar
there are differences which raise collateral questions as to
their extent and how far they affect valuation, and this
has led some courts to reject all such evidence and admit
reference to sales only as a test upon cross-examination.
(10 R. C. L. 221.) Such evidence is admitted in this juris-

diction but must be kept within reasonable limits. In this case the court admitted evidence of sales of swamp land without a tree on it; of stump land; of sloughs; land that was under water every spring, and land without improvements. There is between all kinds of land some sort of relation so that witnesses may think they see some similarity. Polonius was a witness that the cloud was like a camel indeed, and backed like a weasel or very like a whale, but courts do not humor delusions, and if a person not afflicted in that way should contemplate buying an upland tract partly tillable and partly in forest, he would not think of ascertaining what stump land, swamps and sloughs without improvements had been sold for, to enable him to determine what he ought to pay. While such evidence could only tend to mislead the jury there is no assignment of cross-errors on the admission of it and the incompetent evidence is only made use of as an argument that the verdict was right. The appellees insist upon upholding the judgment on account of alleged errors against them, and on that account, and because the case must be tried again, the rules as to the admission of evidence of sales are here stated. There are cross-errors assigned on the refusal of the court to admit evidence of values of small tracts of residence property in Palos Park and Palos Highland and photographs of houses in those villages, but they are offered mainly as makeweights for an affirmance. The rules stated will be a sufficient guide to the court on another trial. The court is not able to say that the judgment ought to be sustained because of the admission of the evidence or the fact that the opinions of witnesses for the appellant were influenced by it.

Over the objection of the appellant a professional forester in the lumber business was examined as a witness for the appellees. He qualified as an expert with large experience in that line, having investigated timber lands in many States for the purpose of converting trees into lumber. He had made many cruises of timber for the purpose of de-

termining the quantity of lumber which might be produced, and he gave testimony that he had made a cruise of the tract in question and gave the log scale measurement of the white oak, red oak, walnut, cherry, ash and hickory trees on this tract of land. In his cruise he made up his mind where he would place a saw-mill along the creek and make a logging camp on the land. He figured on the market value of the lumber, and, counting expenses, said that the timber was worth when the petition was filed $84,722.40. He answered an inquiry of the court that his opinion was directed to the value of the timber standing on the ground, but it was clearly the value of the product, deducting expenses and leaving the land as stump land, with no evidence what the stump land would be worth if denuded of the forest. The appellees had a right to prove what the land was worth taking account of the fact that there was valuable timber on it, but the evidence was directed as to what could be realized in setting up a saw-mill and sawing lumber and getting it to the market on the day the petition was filed, which, of course, was utterly impossible. The rule is that compensation must be estimated for the land as land, with all its capabilities, and if there is timber on it, or coal, oil or other minerals under the surface, they are to be considered so far as they affect the value of the land, but they cannot be valued separately. Trees were a component part of the land, and there was no justification for admitting evidence of what could be realized by separating the timber from the land as personal property. (Lewis on Eminent Domain, sec. 724; 20 Corpus Juris, 798.) The test as to value includes not only the actual uses to which land is applied, but its capabilities which add to its market value. If it has a water power and mill site, which add to its value, it is competent to make proof of that fact. (*Haslam* v. *Galena and Southern Wisconsin Railroad Co.* 64 Ill. 353.) If the land has upon it anything which materially adds to its market value, the owner has a right to show its character and to

299—2

what extent it enhances market value. (*DeBuol* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 499; *Vandalia Levee and Drainage District* v. *Hutchins,* 234 id. 31.) If a railroad company in acquiring an easement will destroy a building which stands in its way, its value as a building must be paid. (*Lafayette, Bloomington and Mississippi Railroad Co.* v. *Winslow,* 66 Ill. 219.) Not only was it error to allow the value of the trees when converted into lumber to be estimated separately, but the inevitable effect of such testimony as was admitted would lead to all sorts of collateral issues as to expenses, transportation and other matters taken account of by the witness, which would be confusing in the extreme.

To meet and obviate the effect of the incompetent testimony of the lumber expert the appellant asked the court to instruct the jury as follows:

"The jury are instructed that the value of the growing timber upon the premises sought to be taken, should not be considered as separate and apart from the land, but should only be considered as a part of the said property in fixing the fair cash value of the premises as a whole as they existed on September 19, 1919."

The court refused to give the instruction, but offered to give it if the appellant would add after the words "growing timber," "the buildings and fences." The only objection to the instruction offered by counsel is that it singled out one item of evidence, which might be a valid objection if it were not for the fact that the forester had given the incompetent evidence, and the appellant had a right to direct attention to it, and, so far as possible, limit its effect.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*