(No. 31838.

THE CITY OF CHICAGO, Appellee, *vs.* FRED W. HARBECKE *et al.*, Appellants.

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

FRANKLIN J. STRANSKY, MICHAEL F. MULCAHY, and FRANK C. RATHJE, all of Chicago, (THERON L. RATHJE, of counsel,) for appellants.

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (JOHN C. MELANIPHY, and FRANCIS S. LORENZ, of counsel,) for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellee, the city of Chicago, filed a petition in the circuit court of Cook County to condemn two tracts of improved land owned by William B. Harbecke and his brother Fred W. Harbecke, who, along with their wives, are the appellants. One tract, identified in the record as No. 98, was a complete quarter section of 160 acres, while the other, referred to as No. 774, was an L-shaped tract of approximately 126 acres. Both were used as dairy

farms and, in addition to residences of the owners, were improved with various farm buildings. The property was sought for the purpose of extending, expanding and improving the Chicago Orchard Airport. The jury awarded compensation in the sum of $77,600, or $485 an acre, for No. 98, and $40,233.38, or $320 an acre, for No. 774. A motion for a new trial was overruled and appellants now object to the judgment entered on the verdict on the ground that the compensation was inadequate; that the court committed numerous errors in admitting, excluding and limiting various segments of the evidence, and that the jury was improperly instructed.

The two tracts in controversy are located in Cook County just south of the airport sought to be expanded, and three miles west of the city limits of Chicago. They are situated in varying degrees of proximity, ranging from one to four miles, to the cities of Des Plaines, Park Ridge, and Franklin Park, and the villages of Schiller Park and Bensonville. Parcel 98 is adjoined on the east by Mannheim Boulevard, a four-lane concrete highway, and on the south by Lawrence Avenue, a two-lane black-top road. Parcel 774 is adjoined by Irving Park Road on the north and by Taft Avenue on the west, both of which are paved roads. The North Western Railroad has tracks running along the west side of Taft Avenue at this point, which connect with the Milwaukee Railroad's large freight yards a short distance away. The greatest portion of the land immediately surrounding the controverted tracts consists of small acreages devoted to truck farming and other specialized uses. Within what an expert witness for appellee describes as the "perimeter of the airport," there are a few small subdivisions, and some small residences sporadically located on one-acre tracts. It appears that both of appellants' tracts, which are being used as dairy farms, are adaptable for use as truck farms or for subdivision purposes, because of their soil, topography and drainage.

Expert witnesses for appellee were of the opinion that the highest and best use to which both tracts are adapted is general farming. The values they fixed for parcel 98 ranged from $400 to $410 per acre, while those placed on parcel 774 fluctuated from $250 to $350 per acre. Witnesses for the appellants expressed a belief that the highest and best use to which parcel 98 was adapted was to subdivide it into small acreage tracts, either for truck farms or for residences. Their opinions differed as to the exact size the subdivided units should be, as did their estimates of value which ranged from $1200 to $1850 per acre. As to parcel 774 two of appellants' witnesses thought that the 80 acres nearest the railroad could best be adapted for industrial purposes, and the balance subdivided into small acreage tracts. Two other witnesses thought the highest and best use for the whole tract was to subdivide it. Their estimates of value as to it extended from $575 to $1600 per acre.

In cases of this nature we have held that where testimony as to values is conflicting, after the jury has viewed the premises, and the verdict is within the range of the testimony, the award will not be disturbed on review unless there is something in the record showing that the verdict was a clear and palpable mistake or the result of passion and prejudice or that there was some erroneous ruling which might have misled the jury. (*Forest Preserve Dist.* v. *Draper,* 387 Ill. 149; *City of Mt. Olive* v. *Braje,* 366 Ill. 132.) In a condemnation proceeding of private property for public use, the court must give accurate rulings on evidence and correct instructions to the jury. (*City of Chicago* v. *Lederer,* 274 Ill. 584.) Since it is our opinion that the judgment in this case must be reversed for erroneous rulings on evidence which appear in the record, no beneficial purpose would be served by commenting on the question of the inadequacy of the award arrived at by the jurors.

Appellants' first assignment of error is that the trial court erred in admitting evidence of the sale of lands allegedly similar to that being condemned. Wesley Leuhring, a witness for appellee, described the sale of an 88-acre farm located in Cook County approximately ten miles west of appellants' land, and of farms containing 90, 152 and 126 acres, located to the northwest in Du Page County, at distances of five, eleven and eight miles, respectively. All were dairy farms located in a general farming area and brought prices ranging from $275 to $320 an acre. It is appellants' chief contention that there can be no substantial similarity between these farms and the property being condemned because of the distances between their locations. In addition, it is contended that appellee failed to maintain its burden of proof with respect to similarity of soil and value of improvements on the respective properties.

Past decisions of this court have firmly established that the measure of compensation for land taken by eminent domain must be its fair cash market value for the highest and best use to which it is available, even if, at the time of filing the petition, the land is not being put to such use. (*Forest Preserve Dist.* v. *Lehmann Estate, Inc.* 388 Ill. 416; *Dept. of Public Works and Buildings* v. *Barton,* 371 Ill. 11.) To assist the jury in its determination of the value of the land being taken, this State has long since adopted the majority practice of admitting proof of voluntary sales of similar property as collateral evidence of value. (*Forest Preserve Dist.* v. *Alton Railroad Co.* 391 Ill. 230; *Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11; *Kankakee Park Dist.* v. *Heidenreich,* 328 Ill. 198.) However, the party offering to prove sales of other property claimed to be comparable with the property being condemned has the burden of proof, as a preliminary to the introduction of the price involved in such sales, to show that they are similar both in character and locality to the land in controversy. (*Forest Preserve Dist.* v. *Draper,* 387 Ill. 149; *City of*

*Mt. Olive* v. *Braje,* 366 Ill. 132.) With the same frequency with which the issue of similar sales has been raised in this court, we have pointed out that the exact limit either of similarity or difference, or of nearness or remoteness of sale in point of time, is difficult, if not impossible, to prescribe by any arbitrary rule, but must to a large extent depend on the character and location of the property and the circumstances of the case. As a corollary to the foregoing rule, it is likewise held that the question of similarity must be submitted to the trial judge and must rest largely in his discretion. *Forest Preserve Dist.* v. *Wing,* 305 Ill. 194; *Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11; *Forest Preserve Dist.* v. *Barchard,* 293 Ill. 556.

Appellants' objection to Leuhring's testimony and the discussions of the court and counsel outside the presence of the jury, as reflected in the record, raise the issue of the similarity of the lands with respect to location. Appellants also make the contention that appellee failed to prove similarity of character of the soil of the various properties, and the comparative values of the improvements on each tract. However, in the view we take, a determination of those points and the question of whether appellants' objection enables them to raise it on appeal are not necessary in this opinion. It is stated in the annotation in 118 A.L.R. 870, at page 877, that "The effect of the location of other land in determining its similarity to the land in controversy is manifested in two ways—(1) the distance of such other land from the land in question, and (2) the situation of such other land with respect to business or residential advantages or conveniences (or, conversely, disadvantages or inconveniences) in comparison with the situation of the land in question in those respects. * * * Needless to say, no general rules can be laid down as to the distance at which other land ceases to be similar enough in location to the land in question so that evidence as to its sale price is admissible to prove the value of the

latter land. The determination of this question depends upon the character of the land involved and the facts and circumstances of the particular case." This court has held that mere proximity of land is not a test, (*Forest Preserve Dist.* v. *Caraher*, 299 Ill. 11; *Forest Preserve Dist* v. *Chilvers*, 344 Ill. 573,) but we find no decisions of this court, or of others, stating that remoteness of location, alone, will establish dissimilarity. In *Concordia Cemetery Ass'n* v. *Minnesota and Northwestern Railroad Co.* 121 Ill. 199, sale of land one mile distant was held admissible where there was no evidence of actual present market value, nor sales of like property nearer. Evidence of sales two miles from plaintiff's land was held competent in *Smith* v. *Sanitary Dist.* 260 Ill. 453, where a general similarity in kind, situation and condition was shown. In *East Side Levee and Sanitary Dist.* v. *Jerome,* 306 Ill. 577, evidence of a sale of land one and one-half miles distant from that being condemned was held inadmissible, not because of the distance but on the ground that they were of different character. While there is a great difference in the distances involved in the instant case from those appearing in the cases cited, the latter cases indicate that where the question of distance has been raised, the effect of location in determining similarity has not been based on distance alone, a policy to which we shall adhere.

In the present case it may be admitted that the four farms are similar in size and usage to appellants' property, but the force of these factors is overcome when the dissimilarities arising from location are considered. To state a few, parcels 98 and 774 are located in an area where the land has been predominantly divided into small acreages which are used as truck farms, subdivisions, residence properties and other specialized uses; they are close to several towns and villages which are increasing in population and expanding in size; they are situated but three miles from the city limits of Chicago; and they are more

advantageously located with respect to the main highways. Parcel 774 is adjacent to, and has access to, a railroad track in an area of unusual railroad activity. The properties held forth as similar are located in a general farming area composed of farms with large acreages; they do not have the same proximity to expanding population and business centers; they are further removed from the limits of the city of Chicago; are more removed from the main avenues of traffic; and none have railroad frontage comparable to that of parcel 774. The differences in the properties may be summarized briefly by stating that appellants' land appears to be (1) located in an area which has undergone a transition from a general farming character to one of specialized small acreage tracts, and (2) is located at the fringe of an area which is developing from semi-urban to urban in character. The farms described by witness Leuhring as yet remain in a general farming area characterized by large tracts. Under such circumstances, their locations cannot be said to be comparable to those of appellants' land. Because of this substantial dissimiliarity it was error to allow evidence of their sale to go to the jury, and the judgment must be reversed. *Forest Preserve Dist. v. Caraher,* 299 Ill. 11; *Chicago and State Line Railway Co. v. Mines,* 221 Ill. 448.

Appellants themselves sought to introduce evidence of sales of similar property and the trial court's action of excluding it from the jury is also assigned as error. From the record it appears that when evidence of similar sales was first discussed by the court and counsel outside the presence of the jury, the trial judge arbitrarily stated that he would admit no evidence of sales of tracts under 40 acres, indicating then, as he did later while ruling on appellants' proffer of evidence, that tracts under that figure could not be said to have any similarity to the 160-acre and 126-acre parcels being condemned. Accordingly, on this ground, he excluded from the jury's consideration

William Harbecke's testimony that he had sold an 18½-acre tract for $25,000, another of 5 acres for $12,500, and the testimony of one Malachowski that he had purchased 20 acres for $25,000. All the foregoing land was in the same township as the land being condemned and was situated a mile to a mile and a half away. We find no precedent in this State, or in the authorities we have examined, to support the court's action of fixing an arbitrary size below which no similarity can exist. Rather, the view has been expressed that a mere discrepancy in size between the tract of land in controversy and another tract will not render evidence as to the sale price of the latter inadmissible to prove the value of the former. (118 A.L.R. 884.) In Massachusetts, where the practice of admitting proof of similar sales as collateral evidence of value was established, it has been held that mere difference in size of land is *not decisive* against the competency of the evidence, although it may be considered. (*Sawyer* v. *City of Boston,* 144 Mass. 470, 11 N.E. .711; *Teele* v. *City of Boston,* 165 Mass. 88, 42 N.E. 506.) Other characteristics being equal, or almost equal, we see no reason to hold that size, standing alone, establishes such dissimilarity as to render collateral evidence of this nature completely incompetent. The ultimate fact to be determined in an eminent domain proceeding, from both collateral and direct evidence, is the fair cash market value for the highest and best use to which the land taken is available, even though it is not being put to such use at the time the petition is filed. To hold that similarity is controlled solely by the size of the land being condemned, and to limit collateral evidence for that reason, arbitrarily limits the proof of value of the land being taken, despite the fact that it is best adapted to the use being made by the smaller, but in other respects similar, tracts. The unjust results are demonstrated in the present case, for although appellants' witnesses testified that the highest and best use of the land

being taken was to subdivide it into smaller tracts, appellants, because of the location of their land, were almost completely prevented from presenting collateral evidence of value for that use when the court arbitrarily set an acreage figure at which similarity ceased to exist. The only evidence of value offered by appellants which went to the jury was the opinions of their experts, which, as pointed out in *Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11, is usually not accepted by the jurors. On the other hand, appellee's witnesses testified that the highest and best use of the land sought was general farming, and abundant collateral evidence of the value for that use was admitted to the jury. It follows that the instructions given further pin pointed such collateral evidence for the jury in the absence of corresponding collateral evidence on behalf of the appellants. As we view it, the combined effect of the court's ruling, that size, of itself, establishes dissimilarity, was to penalize appellants for owning large tracts of land in an area predominantly composed of smaller tracts. We do not pass or comment upon whether the evidence offered by appellants shows that the land sold at other sales is sufficiently similar in other respects to the land taken to make it competent, but express only the opinion that it was error for the court to exclude such evidence on the ground that he did, *viz.,* that the tracts were not of the same size.

Walter Schultz, another witness for appellants, sought to testify to the sale of a 40-acre truck farm, one and three-quarters miles from appellants' land, for the sum of $52,102.25; however, the court sustained an objection to it because the proof showed that it was located within the corporate limits of Schiller Park. This, too, was error, for this court has previously held that the location of land within corporate limits does not alone destroy its similarity to land not within such limits. (*Forest Preserve Dist.* v. *Lehmann Estate, Inc.* 388 Ill. 416; *Forest Preserve Dist.*

v. *Collins*, 348 Ill. 477.) One Archibald McLaughlin, also a witness for appellants, was called to testify relative to a nearby 51-acre tract which had been sold at a master-in-chancery's sale. We are of the opinion that the trial court properly excluded his testimony when it appeared that the witness did not know the conditions of the sale.

Other errors have been assigned but are such as will not occur on a retrial. For the reasons stated, we are of the opinion that this cause must be heard before another jury; accordingly, the judgment of the circuit court of Cook County is reversed and the cause remanded for a new trial.

*Reversed and remanded.*