(No. 41333.—

THE DEPARTMENT OF PUBLIC WORKS AND BUILDINGS, Appellee, *vs.* DONALD E. OBERLAENDER, Appellant.

*Opinion filed March 27, 1969.—Rehearing denied May 27, 1969.*

JAMES A. DOOLEY, of Chicago, and HERBERT M. SPECTOR, of Rock Island, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD E. QUINN, HAROLD G. ANDREWS, JAMES J. CORYN, and CHARLES W. BLACHINSKY, Assistant Attorney General, of counsel,) for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

A petition was filed on January 3, 1964, in the circuit court of Henry County on behalf of the State of Illinois, the appellee, to condemn 44.22 acres of land out of a tract owned by the appellant, Donald Oberlaender. The land sought by the appellee was required for the construction of Federal Aid Interstate Route 80. The cause was tried by a jury, which was permitted to view the premises. No claim was made by the appellant for damages to his land which was not sought by the appellee in the condemnation petition. At trial the landowner presented four valuation witnesses, whose opinions as to the value of the parcel taken ranged from $500,000 to $625,000. In addition, the appellant testified to a value of $606,750 for the property concerned. In contrast, the witness for the appellee who was allowed to express an opinion valued the tract taken at $56,000. The jury returned a verdict fixing compensation at $600,000 and the trial court, after denying the appellee's motion for a new trial, entered judgment on the verdict. On appeal, the Appellate Court for the Third District determined that erroneous rulings of the trial court, considered cumulatively, had been substantially prejudicial to the appellee and it reversed and remanded the cause for a new trial. (92 Ill. App. 2d 174.) We have granted the appellant leave to appeal from this decision.

The opinion of the appellate court described some of the evidence presented at trial: "The entire tract owned by [appellant] and his father before him had been used as a part of a sand quarry for more than fifty years. The sand deposits are in banks or dunes requiring the removal of little overburden to secure access thereto. The thickness of the deposits varies from place to place and there is considerable conflict in the evidence concerning the quantities of the sand deposits underlying the entire tract and the part taken, the estimates of the deposits of sand underlying the land taken ranging from [about] 1,300,000 tons to more

than 3,600,000 tons. * * * Evidence was introduced concerning the nature and character of the sand on respondent's property, its actual and potential uses and the ways in which the sand deposits on respondent's property differed from those on similar property." (92 Ill. App. 2d at 178-9.) Evidence was presented, too, as to the deposit's favorable location with respect to the market for sand, transportation, market potential and other factors.

The appellant argues that the appellate court mistakenly held that the trial court erred in ruling incompetent the proposed testimony of appellee's witness William Franzen, as to the value of the tract taken.

Before exclusion of his proposed testimony of valuation, which an offer of proof showed would have been $58,000, Franzen testified in detail as to his qualifications. He was a licensed real-estate broker in Illinois devoting full time to real-estate appraising and he had been so occupied for 30 years. Franzen related that he was on the governing council and editorial board, and chairman of the rural technical committee, of the American Institute of Real Estate Appraisers and that he also was a member of the Society of Real Estate Appraisers. He further testified that he had taught courses relating to real-estate appraising at 5 universities, including the University of Illinois. The witness had examined the premises in question and his testimony showed that he was familiar with real-estate conditions in Henry County and experienced with mineral lands generally. According to his testimony, Franzen's experience included the making of 7 appraisals of mineral lands in Northern Illinois, made for both private owners and governmental agencies, including one or more made in Henry County. It appears that the basis of the trial court's ruling of incompetency, in response to an objection of the appellant, was that Franzen had not participated as a buyer, seller or broker in Northern Illinois real-estate transactions involving property of the kind under consideration.

Directly opposed to such ruling of the trial court is our decision in *Department of Public Works and Buildings* v. *Divit*, 25 Ill.2d 93. In *Divit* a parcel of property in Kankakee County was being condemned for the purpose of constructing a highway interchange. The qualifications, to express an opinion of value as to the land taken, of a Wisconsin real-estate appraiser, with nationwide and Illinois experience, were challenged on the ground that he had no knowledge of Kankakee realty values so as to qualify him as an expert. This court held that the appraiser qualified as a competent valuation witness and it was specifically declared at page 99: "It is recognized in Illinois that any person acquainted with a particular property may testify as to its value even though he is not engaged in the buying and selling of similar properties in that locality. (*Department of Public Works* v. *Bohne*, 415 Ill. 253.)" (Accord, *City of Chicago* v. *Chicago City Railway Co.*, 309 Ill. 448, 458, 459.) A witness is competent to testify as to the value of real property if it appears that he has some peculiar means of forming an intelligent and correct judgment as to the value of the land in question beyond what is presumed to be possessed by men generally. *Mauvaisterre Drainage and Levee Dist.* v. *Wabash Railway Co.*, 299 Ill. 299, 315.

It is clear that the trial court applied an erroneous standard of qualification for the witness Franzen, as the "buying and selling of similar property in the locality" is not a prerequisite to the giving of an opinion of value. It is clear, too, that Franzen had familiarized himself with the tract and that he was qualified by training and experience to express a valuation opinion potentially of value and influence with the jury. The appellate court properly judged that the trial court erred in not permitting Franzen to give his opinion of the land's value.

Too, the appellate court agreed with the appellee's contention that three of the appellant's witnesses had considered improper factors in arriving at their valuations and

that the trial court accordingly erred in refusing to strike the valuation testimony of these witnesses. The appellant complains now that the questioned considerations involving the sand deposits and the business of their removal and sale were appropriately considered by the witnesses.

It is not questioned here that the measure of compensation for land taken in a condemnation proceeding is the fair cash market value of the property for its highest and best use. Fair market value can be defined as the price for which the property would sell under ordinary circumstances surrounding the sales of property, assuming both an owner willing to sell and a purchaser willing, but under no compulsion, to buy. (*Forest Preserve Dist.* v. *Hahn*, 341 Ill. 599, 602; see, *Department of Public Works and Buildings* v. *Filkins*, 411 Ill. 304, 307.) Concerning the fair market value of land containing mineral deposits this court has stated that: "The rule is that compensation must be estimated for the land as land, with all its capabilities, and if there is timber on it, or coal, oil or other minerals under the surface, they are to be considered so far as they affect the value of the land but they cannot be valued separately." (*Forest Preserve Dist.* v. *Caraher*, 299 Ill. 11, 17; accord, *Department of Public Works and Buildings* v. *Hubbard*, 363 Ill. 99, 102; see also *City of Chicago* v. *Central National Bank*, 5 Ill.2d 164, 175; *Chicago Land Clearance Com.* v. *Darrow*, 12 Ill.2d 365, 372.) Putting it somewhat differently, where, as here, the property is not taken for the purpose of obtaining the minerals or a going business (see *City of Chicago* v. *Farwell*, 286 Ill. 415, 423; 29A C.J.S. Eminent Domain, § 174, p. 737, note 87), it is improper to appraise separately the mineral deposit and add its value to the value of the land without the deposits (4 Nichols on Eminent Domain 13.22; 1 Orgel, Valuation under the Law of Eminent Domain, 2d ed. sec. 165, p. 672; Jahr, Law of Eminent Domain—Valuation and Procedure, sec. 151; see *Department of Public Works and Buildings* v. *Lotta*, 27

Ill.2d 455, 456.) It is proper, however, for the owner to establish the existence of valuable mineral deposits on the real estate being valued and in doing this to show the character of the deposit(s) and to what extent it enhances the land's market value. *Forest Preserve Dist.* v. *Caraher,* 299 Ill. 11, 17-18; *Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11, 23.

It is apparent from what we have said and from a reading of the testimony of each of the three witnesses of the appellant, Fred Davis, William Chadwick and W. J. Reese, whose testimony the appellee had protested, that their opinions considered improper standards of value, namely, the worth of the sand deposits separately determined from the land or as a going business concern.

Fred Davis, an officer of a company selling and producing industrial sand for the foundry and glass trades, had testified to a value of $600,000 for the land condemned. However, he stated that his opinion was based on "what could be realized from this deposit if it was processed in the normal way." On cross-examination, Davis's testimony was that he was valuing the sand in place as part of a going business and that his opinion of $600,00 as to value was based on what the property would be worth if he was going to buy "the sand and the rest of the business."

William Chadwick had a background in the industrial sand business as a seller and producer. He testified that in his opinion the value of the 44.22 acre parcel taken was at least $550,000. However, it is evident that the witness had formed this estimate by independently valuing the sand deposit with a "dollar value set on the reserves," considering a unit market price and then adding to this the value of the land remaining after the sand's evacuation.

The appellant's other appraisal witness was W. J. Reese, a consulting engineer, experienced in determining the quantity and quality of sand and gravel in deposits and in negotiating the amount of royalties payable for materials to

be removed from land. Reese expressed his opinion that the value of the tract taken was $625,000. It is clear from a review of the entire testimony of the witness, though, that he had incorrectly valued the property as sand deposited in the ground, primarily using a projection of the appellant's increasing production record. For example, Reese stated on cross-examination that his valuation of $625,000 "is the value of the sand deposit" and that "in my opinion the value of the sand was worth $625,000."

We judge, therefore, that the valuation testimony of the witnesses Davis, Chadwick and Reese should have been stricken by the trial court.

It was ruled by the appellate court that the trial court's refusal to allow the appellee to cross-examine certain defense appraisal witnesses as to their opinions of the value of the entire tract owned by the appellant was error. It is argued by the appellant that the trial court's ruling had been proper, as the value of all the property is irrelevant where, as here, no damages are asked for the land not sought by the State and the value of the parcel condemned is not greater when that parcel is considered as part of the whole tract. This argument of the appellant does not persuade.

Each of the five valuation witnesses, including the appellant, presented in behalf of the appellant, was asked by the appellant's attorney only to give his opinion as to the value of the land taken "as a part of the whole." In *Forest Preserve Dist.* v. *Draper,* 387 Ill. 149, the Forest Preserve District sought to condemn an irregularly shaped corner portion and two side strips of land out of a 60-acre farm. There, as here, no damages pertaining to land not sought by the district were requested. Further, the district's witnesses fixed the value of the realty taken as part of the entire tract, but, apparently, as here, cross-examination as to the value of the whole tract was denied. This court explicitly held that the landowner's counsel "should have been permitted to cross-examine them as to their opinion of the

value of the entire tract. The court unduly restricted the cross-examination in that respect. Such interrogation was permissible for testing the basis of their opinions on the value of the tract taken." (387 Ill. 149 at 153; see also *City of Chicago* v. *Equitable Life Assurance Society*, 8 Ill.2d 341, 344, 345.) Here, similarly, the limitation on cross-examination was improper. As in *Draper*, the witnesses concerned had each testified on direct examination as to their opinions of the value of the condemned parcel "as part of the whole" and the cross-examination requested would have fairly tended to test the knowledge of the witnesses and the accuracy and value of their opinions. When a fraction of a tract, which is considered as a portion of the whole tract is given a value by a witness, it is implicit, though it may not be expressed, that the witness has knowledge of the value of the whole tract. Cross-examination as to the value of the whole tract is proper to determine the extent and quality of such knowledge.

We do not find substance in the argument of the appellant that since the appellee did not claim in the appellate court that the verdict was excessive or manifestly against the weight of the evidence, or the result of passion or prejudice, the evidentiary errors discussed herein cannot form the basis of a reversal of the cause by a reviewing court. It is clear that a condemnation award will be set aside on review and a new trial directed if the trial court made an erroneous ruling which might have misled the jury and which amounts to prejudicial error. (*Waukegan Park Dist.* v. *First National Bank of Lake Forest*, 22 Ill.2d 238, 247; *Forest Preserve Dist.* v. *Draper*, 387 Ill. 149, 151; *City of Chicago* v. *Cunnea*, 329 Ill. 288, 298; see also the discussion by the appellate court in this case, 92 Ill. App. 2d 174 at 190, 191.) It is obvious from our discussion above that we deem that there were erroneous and prejudicial rulings here by the trial court. The appellee sufficiently complained in the trial court and in the appellate court of prejudicial error in

this case of a verdict in excess of a half million dollars of the appellee's evidence of the condemned land's value.

The judgment of the Appellate Court for the Third District, reversing the judgment of the circuit court of Henry County and remanding the cause for a new trial, is affirmed.

*Judgment affirmed.*