PEOPLE ex rel. CANAVAN et al. v. COLLIS, Commissioner of Public Works.

(Supreme Court, Appellate Division, First Department.  August 4, 1897.)

1. MANDAMUS—QUESTIONS OF LAW—PRACTICE.

On an application made upon affidavits under Code Civ. Proc. § 2070, providing that mandamus may issue where the right depends only upon a question of law, the application must be decided upon the facts stated in respondent's affidavits, where they are in conflict with the affidavits of relators.

2. EMINENT DOMAIN—APPROPRIATION—WHAT CONSTITUTES.

Laws 1894, c. 56, declaring certain lands to be a public park, and requiring the city of New York to condemn them and have them appraised, operated as an appropriation to public use, especially after the lands were located by filing the map.

3. SAME—RIGHTS OF OWNER AS TO USE OF PROPERTY—MANDAMUS.

Relators are not entitled to a mandamus to compel the commissioner of public works to permit them to cross a sidewalk for the purpose of dumping earth and stones upon a lot that has been condemned for a park, and whose value has been determined, where relators have bought a permit of the owners, who have not been paid the condemnation money, but where such dumping would greatly lessen the value of the land for park purposes.

Appeal from special term, New York county.

Mandamus by the people, on the relation of John Canavan and others, against Charles H. T. Collis, as commissioner of public works. From an order denying the motion for a mandamus, the relators appeal.  Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and PARKER, JJ.

L. Laflin Kellogg, for appellants.
Lawrence L. Sterling, for respondent.

RUMSEY, J.  The relators applied to the commissioner of public works for a permit to cross the sidewalk on the east side of Edgecomb avenue, 200 feet north of 145th street, with carts and trucks, for the purpose of depositing earth upon the property at that place.  This permit was refused by the commissioner, whereupon this motion was made for a mandamus to compel him to issue it, and the question presented by the appeal is whether the court at special term erred in refusing the mandamus.  The motion, having been made upon affidavits, can only be granted where the right depends solely upon questions of law (Code Civ. Proc. § 2070), and, if any disputed question of fact is presented, the court therefore must deny the motion.  In this case the affidavits on the part of the relators were met by contrary affidavits

produced by the respondent. Upon the examination of this question, the facts stated in these affidavits of the respondent must be accepted as stating the true facts upon which the application must be decided (People v. Brush, 146 N. Y. 60, 40 N. E. 502); and the question therefore is whether, assuming the facts to be as stated in the affidavits presented by the respondent, the relators show such a clear legal right to a mandamus that it ought to have been granted by the court.

It appears that the land upon which it is sought to deposit this earth is a portion of the property set aside by chapter 56, Laws 1894, for a park, which was to be called "Colonial Park." This statute described certain lands by metes and bounds, and declared them to be a public parkway for public use and public purposes, and it required the municipal authorities of the city of New York at once, in the manner described in the act, to condemn the property, and have the value of it appraised. The statute provided a complete scheme for the condemnation of the property, and the payment of the price which should be awarded to the owners, and it operated to condemn the land and appropriate it for public use. In re Mayor, etc., 99 N. Y. 569, 580, 2 N. E. 642; In re Public Parks, 53 Hun, 280, 6 N. Y. Supp. 750. From the time of the passage of the act, and certainly from the time when the lands therein were located by the filing of the map, they were fully appropriated and set apart for public use, and the duty of taking proceedings to appraise their value arose; and, as was held in the cases last cited, the value was to be appraised as of the time when the land was taken by the passage of the act. The law gave to the municipal authorities of the city of New York no locus pœnitentiæ, or right to discontinue the proceedings; but the statute made it obligatory upon them, not only to take the proceedings for condemnation, but to pursue those proceedings to a final report. The case is not one where it lay in the discretion of the commissioner of public works or the department of public works whether or not to take lands, or whether or not to continue proceedings which had once been begun for the condemnation of land; but the taking of this land was the act of the legislature, and the absolute duty of having it appraised was imposed upon the city, without any right or power to discontinue it. The rights of the parties, so far as the taking of the land is concerned, were fixed by the statute.

It appears by the affidavits presented by the commissioner that proceedings were taken under the statute for appraising the value of this land, and, so far as this particular piece of property is concerned, the testimony has all been taken; and that testimony was given as to the value of the land at the time of the taking, and in the condition in which it was at the time the act was passed. This fact is not disputed. The land is intended for a public park, and it appears from the affidavits that, when it was appraised, it was in its natural condition. The land proposed to be taken for this park was rough and rocky and unimproved, and to a very considerable extent covered with trees and bushes. In this condition it is easily adapted to be laid out into a public park, and the improvements necessary for that purpose can conveniently and easily be made with reference to the natural condition of the ground. The affidavits of the respondent show that

the filling in of this lot, as it is proposed to be done by the relators, will change its natural surface, and destroy to some extent its adaptability for the purposes for which it was taken, and add greatly to the expense of such grading and improvements of the surface as may be necessary to bring the land into harmony with the remainder of the park, which is necessary in laying it out for that purpose. It further appears by the affidavits that no structures have been erected upon the land, and nothing had been done upon it until after the proceedings to condemn it, when some persons, whose names are not disclosed, began to dump earth upon it, and to change its natural conditions, and that all this seriously diminished its usefulness for the purpose for which it was taken. It also appears that the land belongs to James B. and Mary Ann Powers. The relators have no title to it. The precise nature of the right which they claim has not been made to appear, because they have not produced before the court the contract which they allege they have for filling in the property. All that is known about it is that this contract is not given to them by both of the owners, but by James B. Powers only. This information we have from the affidavit of the relators, and it must be confessed that it is exceedingly meager and not very satisfactory. On the part of the respondent it is alleged that no contract was presented by the relators to the commissioner of public works, or to his deputy, from which the nature of the relator's right could be ascertained. It is further alleged upon information and belief that the contract which the relators say they have for filling this lot for the owner is a mere permit or license given to them for a small sum of money, permitting them to dump upon this lot earth and rock excavated from other premises. While this affidavit is made upon information and belief, the affiant states the sources of his information; and we think the fact thus stated must be accepted as the correct interpretation of the contract, more particularly as the relators did not see fit to furnish to the court or present to the commissioner the contract itself, so that its precise nature could be ascertained.

We have, then, this condition of affairs: This property, being adapted for use as a public park, has been taken by the legislature for that purpose. Proceedings to appraise its value have been taken. The evidence has been given upon both sides upon the theory that the property should remain in its natural condition, and that it should not be made less available for the purposes for which it was intended than it was in its natural state. It is proposed now not to use this property for the ordinary purposes for which land may be used, but to make a substantial and serious change in its condition, the effect of which will add greatly to the expense of devoting it to the purposes for which it was taken. The condition of affairs is substantially the same as it would be if one, having made an executory contract for the sale of land to be paid for at a future time, reserving to himself the right of possession, had attempted to commit waste upon the land, either by digging out its natural surface, or by filling it up, so as to make it less useful for the purpose for which the purchaser intended to buy it. Such things as that, it is quite clear, would not be permitted by the courts; and while it is not necessary to say that the courts

would, in a case of this kind, where property is taken in invitum, restrain the owner from committing waste upon his property, yet it certainly would not lend itself any more than it was required to do, to assist the owner to do the act which practically works a fraud upon the person who is to pay for the property taken. The right to a writ of mandamus is not an absolute legal right by any means. People v. Board of Police, 107 N. Y. 235, 13 N. E. 920. It will be granted to prevent a failure of justice, but never to promote manifest injustice. It is a remedial process, and may be issued to remedy a wrong, but not to promote one; to compel the discharge of a duty which ought to be performed, but not to compel the performance of an act which will work a public and private mischief, or to compel a compliance with the strict letter of the law, in disregard of its spirit, or in aid of a palpable fraud. People v. Board of Assessors, 137 N. Y. 201, 33 N. E. 145. When the city pays for this property, it does so for the property in its natural condition, well adapted for the purposes for which it is intended to be taken. If that condition is permitted to be seriously changed, and rocks, refuse, and earth be piled upon the land, which the city is compelled to remove, it is quite evident that the value will be seriously diminished; and the court is not called upon to lend itself to any proceeding which will work so palpable an injustice upon the taxpayers of the city.

The order appealed from must be affirmed, with $10 costs and disbursements to the respondent.

PATTERSON, O'BRIEN, and PARKER, JJ., concur. VAN BRUNT, P. J., concurs in result.