Emerson, J.
The board of supervisors of Oneida county on August 5, 1919, entered into a contract with petitioner to make certain repairs upon the County Court House for the contract price of $28,250. The contract provided that the work should be done under the supervision of one John Gr. Roberts, a member of the board, and that, upon his certificate of the amount *3 of work done, eighty-five per cent thereof should be paid monthly. The contract further provided that the petitioner guaranteed the work for the period of ten years, and that he should give security in the sum of $10,000 for the faithful performance of the contract. The petitioner entered upon the performance of said contract, and on August 30,1919, had performed work and furnished materials under and pursuant to the same of the value of $6,400. Roberts, the inspector, on that day gave them a certificate to that effect, and stated that the sum of $5,440, being eighty-five per cent of said sum, was then due the petitioner. This certificate they presented to the comptroller of the county for audit and allowance, and also presented a draft on the treasurer of the county for a like amount, which they requested the comptroller to sign. This the comptroller declined to do, and rejected the claim on the sole ground that the contract was void, and that the petitioner had not given such a bond as the contract provided for. The petitioner now asks a peremptory writ of mandamus commanding the comptroller to perform the acts in question.
The purpose of the writ of mandamus is to compel official action. When the duty sought to be enjoined is solely of a ministerial character the court can direct the performance of the act, but when judicial, involving the exercise of discretion, all the power the court has is to command the exercise of such discretion. People ex rel. Harris v. Commissioners of Land Office, 149 N. Y. 26.
But a public officer invested with auditing powers has no right to arbitrarily refuse an audit and where, upon the conceded facts, it is his duty to make such audit, they are of a ministerial character and may be compelled by mandamus. Matter of Troy Press Co., 94 App. Div. 514; People ex rel. Harris v. Commissioners of Land Office, 149 N. Y. 29; People ex rel. Empire *4 City Trotting Club v. State Racing Com., 190 id. 33; People ex rel. Lodes v. Health Dept., 189 id. 187.
Thus mandamus lies against a public officer when there is a clear legal right and he refuses to perform his duty. Matter of Dental Society v. Jacobs, 103 App. Div. 86; People ex rel. Lentilhon v. Coler, 61 id. 223; People ex rel. Gas Light Co. v. Common Council, 78 N. Y. 56.
When the board of supervisors refuses to audit a legal claim on the ground that it is illegal, mandamus will lie. People ex rel. Otsego County Bank v. Supervisors, 51 N. Y. 401; Hall v. Supervisors, 19 Johns. 259.
And the writ lies where there is no question of fact as to amount of claim and the rate of compensation is fixed by undisputed contract. People v. Supervisors, 56 Hun, 459, 461; Boyce v. Board of Supervisors, 20 Barb. 294; People v. Board of Supervisors, 89 App. Div. 152, 155.
So also when the board of supervisors refuse to audit a claim, not on the ground the services were not performed, but upon a question of law as to the legality of the claim, mandamus lies. Matter of Ramsdale v. Supervisors, 8 App. Div. 550; People v. Board of Supervisors, 66 Hun, 633; People ex rel. States v. Smith, 83 id. 432, 436.
The question, therefore, arises whether the acts here sought to be enjoined are of a ministerial character and hence may be commanded by mandamus. This involves to some extent the nature of the duties the comptroller is required to perform. The county comptroller holds office by virtue of chapter 466, Laws of 1909, and his duties are now defined by section 235 of the County Law, which provides that all accounts and claims against a county for work, labor, services, merchandise or materials shall be filed in the office of the county comptroller before being presented to the board of supervisors, and it is made his duty to examine and *5 report upon the same before they are audited and ordered paid by the board, and before reporting the same to the board he is required to ascertain whether such accounts or claims and the prices therein are just and true and are in accordance with the contract or agreement therefor, and whether such work, labor and services have been performed and the merchandise or materials delivered. He is required to attach to such claim or account a certificate showing the result of such examination, and advise an allowance or rejection of the same, and, if he advises a rejection, stating the reasons therefor. The board of supervisors is prohibited from auditing any claim which the comptroller advises should be rejected, except upon a two-thirds vote of all the members elected to the board.
In view of the duties thus enjoined, it seems to me the acts sought to be performed are purely of a ministerial character, involving no discretion, and, therefore, their execution may be compelled by mandamus. Doubtless the comptroller had a discretion to exercise in this case in determining the amount and value of the work performed, and whether the amount asked was the percentage which was due under the contract, but his refusal is not placed on any such ground, but on the sole ground of illegality in the contract and failure to give the required bond. In thus pronouncing upon the legality of the contract the comptroller exceeded the powers conferred upon him by statute, as that is, not a duty which he is-required to perform. Therefore, in doing so the comptroller did not perform judicial duties • of a discretionary nature and, as his return concedes the amount due under the contract, the duties he is asked to perform are purely of a ministerial character.
But, while it is not for the comptroller to pass upon the validity of a contract, yet if such contract is in fact invalid, the court will not command him to act upon *6 the same. People ex rel. Canavan v. Collis, 20 App. Div. 341, 345.
This brings us to the question as to whether or not the contract in question was a valid agreement. The only point raised by the comptroller upon this subject is that it was made without advertising and competitive bidding. I am not referred to any statute or rule of law which required the same to be done in this case, but am referred solely to the local laws or rules adopted by the board itself upon that subject. It is provided by statute (Laws of 1908, chap. 418, § 4), that boards of supervisors shall have power to enact local laws or rules governing their own conduct and manner of doing business. Acting under the power thus conferred, the board adopted certain regulations, some of which they denominated local laws and others rules and orders. Among the local laws is contained section 6, which provides that all contracts involving expenditures of more than $200 should only be awarded after being properly advertised by the board while in session assembled, while among the rules and orders thus adopted is rule 53, which provides that no standing rule or order of the board shall be changed, suspended or rescinded except upon one day’s notice, and the affirmative vote of two-thirds of all the members elected to the board, provided, however, that any such rule or order may be suspended by unanimous consent, and such notice shall not be required on the last day of the session. It is conceded that this contract was let without any advertisement, but it appears from the petition, and is not controverted by the return, that before awarding the contract the provisions of section 6, requiring such advertisement, were duly suspended by the unanimous consent of the board. This, I think, it was competent for the board to do. It seems to me quite clear that in adopting those regulations the words “local laws ” and “ rules ” and “ orders ” are used interchangeably, *7 and whether they be called one name or the other, they all refer to the same thing, that is, the regulation and government of the conduct of the board and their manner of doing business. Indeed this seems to have been the intention of the legislature in conferring this power upon the board, for the language of the statute is “ local laws or rules.” The use of the conjunction “ or ” clearly shows that the words were both used in the same sense. This is all the statute authorizes them to adopt and this is all such local laws and rules purport to do. It is, therefore, quite immaterial what they are called, as they constitute in fact such rules and regulations and nothing else and could, therefore, be properly suspended by virtue of section 53 above referred to.
It follows that the contract in question was lawfully awarded to petitioner and the relief asked should not be withheld on the ground that the same is illegal. It is also urged in opposition to the writ that the petitioner did not furnish the bond required by the contract. This is quite true, but, as there is no requirement that such a bond should be given aside from the contract itself, the board of supervisors, by accepting the bond which was executed, and permitting the petitioner to proceed with the work, waived the giving of any other security.
Counsel for the comptroller further press upon me the general rule that mandamus will not issue where there is a remedy at law, and that a suit against the county will lie in behalf of petitioner for the contract breach in question. I do not think such a suit would furnish the petitioner with that adequate and complete remedy to which he is entitled. He has already performed work upon the contract to the amount of $6,400, and, by its terms, he is now entitled to be paid eighty-five per cent thereof, or $5,440. To compel him to bring an action and thus turn him over to the slow process *8 of the law would practically nullify this provision of the contract. People ex rel. Grannis v. Roberts, 45 App. Div. 146, 153.
It is also said that no fund has been provided by the board of supervisors to meet this claim. This, however, is no reason why the writ should not issue. People ex rel. Hasbrouck v. Board of Supervisors, 22 How. Pr. 71.
The question whether the board of supervisors acted improvidently in awarding the contract and whether it will result in a waste of the public funds is not presented here. Such- a question can only arise in another form of action. The petitioner is, therefore, entitled to a peremptory writ of mandamus commanding the comptroller to audit and allow the claim in question and certify the same to the board of supervisors of Oneida county for such action on their part as the case may warrant.
The writ is also asked to compel the comptroller to sign the warrant which was drawn on the county treasurer by the clerk and chairman of the board. I am not referred to any statute or rule which requires the comptroller to sign such warrants, but, assuming such to be his duty, it should not be commanded in this case because, first, the board had no right to act upon the claim in advance of the audit by the comptroller, and, second, the warrant did not conform to the statute in that it did not state the fund against which the same was drawn. County Law, § 235. So far, therefore, as the warrant is concerned, the writ is denied.
As to the board of supervisors, there is no proof that it has refused to audit and allow the petitioner’s claim, and besides, such an act in advance of the report by the comptroller would be premature. As to such board the petition is dismissed.
Allowance of costs in this proceeding is discretionary and, therefore, as only part of the relief asked for is *9 granted, following the well-settled rule in equity, no costs should be allowed to either party. Law v. McDonald, 9 Hun, 23; Barker v. Laney, 7 App. Div. 352; New York, L. E. & W. R. Co. v. Carhart, 1 N. Y. St. Repr. 435.
Ordered accordingly.