## SUNCREST LUMBER CO. v. NORTH CAROLINA PARK COMMISSION et al.

District Court, W. D. North Carolina.
January 14, 1929.

Rollins & Smathers, of Asheville, N. C., Byron F. Ely, of Ridgway, Pa., and Alfred S. Barnard, of Asheville, N. C., for complainant.

A. L. Brooks and L. R. Varser, Asst. Attys. Gen., and Frank Carter, of Asheville, N. C., for defendants.

Before PARKER, Circuit Judge, and WEBB and HAYES, District Judges.

PARKER, Circuit Judge This is an application for an interlocutory injunction heard before a court of three judges constituted in accordance with section 266 of the Judicial Code (28 USCA § 380). The complainant is the Suncrest Lumber Company, a corporation of the state of Delaware, owning property in Swain and Haywood counties, N. C., and the defendants are the North Carolina park commission and the individual members of the commission. The members of the commission are officers of the state. Suncrest Lumber Co. v. North Carolina Park Commission et al. (C. C. A. 4th) 29 F.(2d) 823. And the commission is an agency of the state. Yarborough v. North Carolina Park Commission, 196 N. C. 284, 145 S. E. 563, 567; State Highway Commission of Wyoming v. Utah Construction Co., decided January 2, 1929, 49 S. Ct. 104, 73 L. Ed. ——. Injunction is asked to restrain defendants from instituting condemnation proceedings against the lands of complainant under chapter 48 of Public Laws of North Carolina of 1927, known as the Park Commission Act, or from applying for injunction under section 27 of that act to restrain complainant from cutting timber on said lands. The ground upon which it is asked is that the act violates the rights of plaintiff under the Fourteenth Amendment to the Constitution of the United States and certain provisions of the Constitution of North Carolina. The questions arising under the North Carolina Constitution have been settled against complainant by the de-

cision of the Supreme Court of that state in the Yarborough Case, supra, which is binding upon us. Hunter v. City of Pittsburgh, 207 U. S. 161, 176, 28 S. Ct. 40, 52 L. Ed. 151; Long Island Water-Supply Co. v. Brooklyn, 166 U. S. 685, 688, 17 S. Ct. 718, 41 L. Ed. 1165; 4 Encyc. of U. S. Rep. 1068. This leaves for our consideration only the questions arising under the Constitution of the United States. These also have been decided against complainant by the North Carolina Supreme Court; but its decision with regard to them, although highly persuasive because of the strength of the opinion and the great learning and ability of the judges of the court, is, of course, not binding authority as in the case of questions involving the Constitution of the state.

The statute in question was enacted that the state might avail itself of the provisions of the Act of Congress of May 22, 1926, 44 Stat. 616, 16 USCA §§ 403–403c, providing for the establishment of the Great Smoky Mountains National Park in the states of North Carolina and Tennessee. It appointed a commission composed of eleven citizens of the state, and authorized them to acquire in the name of the state title to the lands which under the act of Congress had been designated by the Secretary of the Interior for the Great Smoky Mountains National Park, and to convey such lands to the United States for national park purposes. It authorized the commission to take over the assets of Great Smoky Mountains, Inc., a corporation of the state of North Carolina, and directed the state treasurer to issue and sell bonds of the state in the amount of $2,000,000 and deliver the proceeds thereof to the park commission to be used in the purchase of land, subject to a provision that the bonds should not be issued until the Governor and council of state should have determined, among other things, that adequate financial provision had been made to purchase the part of the park area lying within the state of North Carolina.

The act authorized the commission, in the acquirement of the land designated, to exercise the right of eminent domain pursuant to chapter 33 of the Consolidated Statutes of North Carolina, the general eminent domain statute of the state, but provided that it should not be necessary to allege or prove that an effort had been made to agree with the owner upon a price, and that the limitations of section 1714 of the Consolidated Statutes, which we need not consider here, should not apply. It provided that condemnation proceedings might be instituted in the

superior courts of Buncombe or Haywood counties or of the county wherein the land sought to be condemned should lie, and that the commissioners to appraise the lands might be citizens of any county of the state. It further provided that, if after the final judgment was rendered, the award should be so excessive as to make the acquisition of the lands undesirable, the commission might elect not to acquire title by filing a written instrument to that effect in the proceeding, but, in that event, should be liable to the land-owner for his costs.

Section 27 of the act, of which particular complaint is made, provides that in any condemnation proceeding the petitioner may apply to the judge of the superior court having jurisdiction thereof for a restraining order against the defendants, and that "if the court is of the opinion that such defendants, or any of them, are engaged in or are likely to be engaged in, or have threatened to engage in, any act that will affect or change the present character and condition of such lands, then such restraining order shall be issued, without bond, and upon such terms as may be just." The act then proceeds to provide that, if the petitioner shall elect not to acquire title to the lands protected by the restraining order, the landowner or landowners interested therein shall have the right to have the damage suffered by them assessed in said proceeding, in the same manner and under the same practice as applies when injunctions are dismissed upon the hearing or upon final judgment. There is a proviso that the state of North Carolina shall be under no obligations or liability for the payment of any damages so assessed; but section 2 of the act provides that out of the funds received from Great Smoky Mountains, Inc., or the pledges made to that corporation, shall be paid the expenses of the commission and any judgment or judgments for damage assessed under section 27.

Pursuant to the act of Congress, the Secretary of the Interior has caused to be surveyed approximately 428,000 acres of land situate in the states of North Carolina and Tennessee, approximately 214,000 acres of which lie within the state of North Carolina, and has signified to the Governors of the two states his willingness to accept same as a national park. The park commission and the Governor and council of state of the state of North Carolina have made the findings prescribed by the act as prerequisite to the issuance of bonds, including the finding that adequate financial provision has been made for the purchase of that part of the area lying within the state of North Carolina, and have authorized the state treasurer to issue and sell notes of the state to the amount of $2,000,000 in anticipation of the sale of bonds as provided by the act. The validity of the act authorizing the issuance of the bonds has been adjudicated by the state Supreme Court (Yarborough v. North Carolina Park Commission, supra), and the commission has the $2,000,000 available for the purchase of land for park purposes. It also has $460,000 in donations and subscriptions which it took over from Great Smoky Mountains, Inc., of which amount approximately $100,000 has been paid to it in cash. It appears also that a like commission of the state of Tennessee has available $1,500,000 from bonds authorized by that state and $383,000 of subscriptions and donations, and has also acquired 76,000 acres of land of a value estimated at $500,000. In addition to this, the Laura Spelman Rockefeller Memorial has donated for the purposes of the park the sum of $5,000,000, which has been deposited in cash in the Equitable Trust Company of New York to be paid over to the North Carolina and the Tennessee commissions on the basis of $1 for each dollar received by the respective commissions from sale of bonds or cash contributions. And it appears that this money is available for payment for lands or for other purposes in furtherance of the Great Smoky Mountains Park.

Complainant is the owner of approximately 37,000 acres of land in Swain and Haywood counties, N. C., 26,000 of which lie within the area designated for the park. Of this 26,000 acres, approximately 20,000 are covered with valuable hardwood timber which complainant is engaged in cutting. Defendants, prior to the institution of this suit, notified complainant to stop cutting this timber, as they intended to acquire the land for park purposes, and, after the institution of the suit, they caused an action to be instituted in the superior court of Buncombe county in the name of the state of North Carolina for the condemnation of the land. In that action they are asking, not only that the land of complainant be condemned for park purposes, but also that pending condemnation complainant be enjoined from cutting timber on the land. Complainant is engaged in operating a large sawmill and lumber manufacturing plant in Waynesville in Haywood county, and has a standard gauge railroad running thence to the land in controversy. It avers that the cutting of the

timber is necessary in order to keep its mill in operation, and that, if it is enjoined from cutting same, it will have to close down its business and will suffer irreparable loss and damage.

Complainant's first contention is that the funds available to the park commission are altogether inadequate for the acquirement of the park area lying within the state of North Carolina; and that the statute authorizing the condemnation of its land, not having made adequate provision for compensation, violates the Fourteenth Amendment, in that it deprives complainant of its property without due process of law. We do not think, however, that we would be justified in finding that no adequate provision has been made for compensation. The funds now available to the North Carolina commission, including the funds placed at its disposal by the Rockefeller Memorial, are between four and five millions of dollars; and the estimated cost of the park area within the state, based upon the opinion of experts and actual purchases in the Tennessee area, is between three and a half and four million dollars. Complainant's estimate is much higher than this, but we are not much impressed with its estimate, in view of the fact that it has placed a valuation of approximately $2,000,000 on the 26,000 acres in controversy, when it appears that this is the remainder of 94,000 acres which, together with a railroad and sawmill, were purchased by complainant in 1916 for $1,000,000. The Governor and council of state, as well as the park commission, have found that adequate financial provision has been made; and, after a careful study of the affidavits presented, we do not think that sufficient evidence has been presented to overcome this finding.

But, even if the funds now available were inadequate for acquiring the lands in the park area, it would by no means follow that the statute authorizing condemnation proceedings is unconstitutional, or that such proceedings should be enjoined. It is true that a statute which authorizes the taking of land and provides no adequate fund for making compensation is unconstitutional. Connecticut River R. Co. v. County Commissioners, 127 Mass. 50, 34 Am. Rep. 338; Rockaway Pacific Corporation v. Stotesbury (D. C.) 255 F. 345; In re Manderson (C. C. A. 3rd) 51 F. 501. But this rule has no application where, as here, the title is not taken until compensation is paid (section 1723 Consolidated Statutes of North Carolina), and objection is merely that the appropriation made is not adequate. In such

case the owner is not divested of his property until he is paid for it, and it must be assumed that, if the state desires the property, it will make a sufficient appropriation. Of course, the compensation to be assessed under the condemnation proceedings is not limited by the amount appropriated. Shoemaker v. U. S., 147 U. S. 282, 302, 13 S. Ct. 361, 391 (37 L. Ed. 170); U. S. v. Gettysburg Electric Ry. Co., 160 U. S. 668, 683, 16 S. Ct. 427, 40 L. Ed. 576.

What was said by Mr. Justice Shiras, speaking for the court in the Shoemaker Case, just cited, which dealt with the condemnation of land for Rock Creek Park in the city of Washington, is appropriate here. Said he:

"The validity of the law is further challenged because the aggregate amount to be expended in the purchase of land for the park is limited to the amount of $1,200,000. It is said that this is equivalent to condemning the lands and fixing their value by arbitrary enactment. But a glance at the act shows that the property holders are not affected by the limitation. The value of the lands is to be agreed upon, or in the absence of agreement, is to be found by appraisers to be appointed by the court. The intention expressed by Congress, not to go beyond a certain aggregate expenditure, cannot be deemed a direction to the appraisers to keep within any given limit in valuing any particular piece of property. It is not unusual for Congress, in making appropriations for the erection of public buildings, including the purchase of sites, to name a sum beyond which expenditure shall not be made, but nobody ever thought that such a limitation had anything to do with what the owners of property should have a right to receive in case proceedings to condemn had to be resorted to."

As stated above, under the general condemnation law of North Carolina, the land is not taken until compensation is actually paid. C. S. § 1723. And this is provided also by section 25 of the act in controversy. There is no need, therefore, to resort to injunction against the condemnation proceedings, even if the fund provided be inadequate; for the right of the landowner not to be deprived of his property without just compensation is protected by the condemnation proceeding which the statute authorizes. As said by Professor Pomeroy in his work on Equitable Remedies at section 466: "No injunction lies against the prosecution of condemnation proceedings where the matter which is set up as a ground of injunction

may be urged as a defense in such proceedings." Here it is not even necessary to set up in the condemnation proceedings the matter complained of; for the statute itself protects the landowner from the loss of his property, unless the compensation determined upon be actually paid to him.

 It is next insisted that the statute denies to complainant due process of law and the equal protection of the laws, in that it authorizes condemnation proceedings to be instituted in Buncombe or Haywood counties, and provides that the commissioners to be appointed by the court to appraise the lands may be citizens of any county within the state, whereas the general condemnation statute provides that proceedings shall be commenced in the county where the land lies (C. S. 1716), and that commissioners shall be appointed who are citizens of that county (C. S. 1720). We see no lack of due process in this. The statute, taken together with the general condemnation statute, which it adopts, provides for personal notice to the landowner by service of summons and also for publication of notice of the petition. It provides also that he may answer and show cause against the granting of the petition. C. S. 1720. If no sufficient cause is shown, the clerk is to appoint as commissioners three disinterested and competent freeholders. C. S. 1720. The commissioners, before entering upon their duties, are required to take and subscribe an oath that they will fairly and impartially appraise the lands, to give ten days' notice of their meeting to the parties or their agents or attorneys, to view the premises described in the petition, to hear the proofs and allegations of the parties and reduce the testimony to writing, and, before proceeding to determine any other claim, to ascertain and determine the compensation to be awarded, which is to be reported to the court. C. S. 1721. If the landowner is not satisfied with the report, he may file exceptions thereto, and, upon determination of same by the court, may appeal to the superior court at term, and thence after judgment to the Supreme Court. C. S. 1723. Upon exceptions to the report of the commissioners, he is entitled in the superior court to have the damages assessed by a jury. C. S. 1724. There is certainly here no denial of due process within the meaning of the Fourteenth Amendment. Long Island Water Supply Co. v. Brooklyn, 166 U. S. 685, 694, 17 S. Ct. 718, 41 L. Ed. 1165; Bauman v. Ross, 167 U. S. 548, 593, 17 S. Ct. 966, 42 L. Ed. 270; Backus v. Fort Street Union Depot Co., 169 U. S. 557, 18 S. Ct. 445, 42

L. Ed. 853. As said by Mr. Justice Brewer in the case last cited: "All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation, and when this has been provided there is that due process of law which is required by the Federal Constitution."

 Nor do we think that the venue provision of the statute and the provision as to the appointment of commissioners can be said to deny to complainant the equal protection of the laws. There is a perfectly good reason for the Legislature to make a distinction between proceedings for condemnation for the purposes of this national park and ordinary condemnation proceedings. In ordinary proceedings, but few persons are affected, and there is no reason to apprehend that the superior court of the county where the land lies will not afford an impartial tribunal, and that freeholders of the county will not be absolutely impartial commissioners. This national park, however, will take a large portion of Swain and Haywood counties, and will directly or indirectly affect practically every citizen of those counties. The Legislature may well have thought that, to insure an impartial tribunal, it should permit the park commission to institute the proceedings in Haywood county, which adjoins Swain, or in Buncombe, which adjoins Haywood, and that in the choice of commissioners the court should not be confined to the county where the land was situate. All persons owning property subject to condemnation for this park are subject to the same laws; and we see no ground for complainant's contention that it is unjustly discriminated against, because in ordinary condemnation suits, which do not affect the whole community, as do the suits for condemnation of the vast park area, suit is required to be instituted in the county where the land lies and commissioners are selected from that county. As said in Barbier v. Connolly, 113 U. S. 27, 32, 5 S. Ct. 357, 360 (28 L. Ed. 923): "Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

In Cincinnati Street Railway Co. v. Snell, 193 U. S. 30, 24 S. Ct. 319, 48 L. Ed. 604, there was involved a statute which provided that, where a corporation having more than fifty stockholders was party to an action pending in a county in which it had its principal office or transacted its principal busi-

ness, the court should change the venue to an adjoining county upon the opposite party filing affidavits that he could not obtain a fair trial in the original county. The statute was assailed on the ground that it denied to plaintiff in error the equal protection of the laws, but the court held otherwise; and what was said by Mr. Justice White, speaking for the court in that case, seems to completely answer the position of complainant here. Said he:

"The proposition to which the case reduces itself is therefore this: That although the protection of equal laws equally administered has been enjoyed, nevertheless there has been a denial of the equal protection of the law within the purview of the Fourteenth Amendment, only because the State has allowed one person to seek one forum and has not allowed another person, asserted to be in the same class, to seek the same forum, although as to both persons the law has afforded a forum in which the same and equal laws are applicable and administered. But it is fundamental rights which the Fourteenth Amendment safeguards and not the mere forum which a State may see proper to designate for the enforcement and protection of such rights. Given therefore a condition where fundamental rights are equally protected and preserved, it is impossible to say that the rights which are thus protected and preserved have been denied because the state has deemed best to provide for a trial in one forum or another. It is not under any view the mere tribunal into which a person is authorized to proceed by a State which determines whether the equal protection of the law has been afforded, but whether in the tribunals which the State has provided equal laws prevail.

"It follows that the mere direction of the State law that a cause under given circumstances shall be tried in one forum instead of another, or may be transferred when brought from one forum to another, can have no tendency to violate the guarantee of the equal protection of the laws where in both the forums equality of law governs and equality of administration prevails."

See, also, Missouri v. Lewis, 101 U. S. 22, 25 L. Ed. 989; Hayes v. Missouri, 120 U. S. 68, 7 S. Ct. 350, 30 L. Ed. 578; Chappell Chemical & Fertilizer Co. v. Sulphur Mines Co., 172 U. S. 474, 19 S. Ct. 268, 43 L. Ed. 520; Power Mfg. Co. v. Saunders, 274 U. S. 490, 496, 47 S. Ct. 678, 71 L. Ed. 1165.

In suits instituted to condemn lands under the park act, it is required that the commissioners appointed by the court be competent and disinterested. If not satisfied with their award, the landowner may appeal and have a hearing before an impartial jury. It is perfectly clear, therefore, that the statute provides a fair and impartial tribunal for the assessment of the value of the land taken, and this is all that the landowner is entitled to. It does not concern him that in other condemnation suits the Legislature has thought that the superior court of the county where the land lies furnishes a fair tribunal. The state, of course, cannot discriminate without reason in fixing venue (Power Mfg. Co. v. Saunders, supra), but, as above indicated, we do not think that such discrimination as can be said to be shown by the statute was without a reasonable and adequate basis.

It is next insisted that section 27 of the act, which authorizes the granting of injunctions, violates the due process clause of the Fourteenth Amendment, even if the remainder of the act is valid, and that we should enjoin defendants from seeking injunctions in the condemnation proceedings, even though we do not enjoin the proceedings themselves. The invalidity of section 27 is asserted on two grounds: (1) Because it authorizes an injunction which will interfere with the landowner's use of his own land prior to its acquisition by the state; and (2) because no adequate fund is provided from which damages can be collected by the landowner in case the state does not finally take the land.

As to the first proposition, it is true that the statute authorizes the injunction before title to the land has been acquired by the state; but it should be observed that the granting of such injunction is authorized only where the land in question has been designated by the Secretary of the Interior as a part of the national park area, and where proceedings for condemnation have actually been instituted. Sections 25 and 27. After the Secretary has thus acted and proceedings have been instituted, the land, until paid for, is nevertheless the property of the landowner; but it is land in process of being condemned for a public purpose, and we know of no reason why the Legislature may not clothe the courts with the power, while the proceedings are being conducted, to preserve the condition which makes it of value for the public purpose. It would seem self-evident that, if the state has a right to take property for a public use, it has the right while engaged in the act of taking to prevent it from being so mutilated as to destroy the use which it has for the public. Under the statute here, if the property is condemned and taken, the

owner receives compensation for the land and all that is on it, and is thereby compensated for not being allowed to cut and remove the timber. If for any reason it is not finally taken, he receives under the statute any damage which he may have sustained by reason of the granting of the injunction. In any event, therefore, he is paid for that of which he has been deprived in the condemnation proceeding. In the one case he is paid for his property; in the other for the use of it of which he has been deprived. Cherokee Nation v. Kansas Ry. Co., 135 U. S. 641, 660, 10 S. Ct. 965, 34 L. Ed. 295.

In the condemnation of so large an area as that which is embraced in this park, much time must necessarily be consumed. The surveying of the lands, the cruising of the timber, and the various hearings before the commissioners and the courts will necessarily take quite a while. If the landowners in the meantime are to be allowed to cut and destroy the timber, by the time the condemnation is completed, the value of the lands for park purposes may have been destroyed. Surely the state has power through its courts which are conducting the condemnation proceedings to preserve the status quo until they can be concluded.

It has been held that, while the owner is entitled to the ordinary use of the property pending condemnation (Matter of New York, 196 N. Y. 255, 89 N. E. 814, 36 L. R. A. [N. S.] 273, 17 Ann. Cas. 1032), he cannot make substantial changes in its condition which will seriously injure its value. (20 C. J. 970; People v. Collis, 20 App. Div. 341, 46 N. Y. S. 727). And it is well settled that statutes are valid which confer on the courts the power to authorize the condemnor, on giving security or making a deposit, to take possession of the property pending the proceedings. 20 C. J. 969, 970; Backus v. Fort Street Union Depot Co., supra, 169 U. S. 557, 568, 18 S. Ct. 445, 42 L. Ed. 853; Cherokee Nation v. Kansas Railway Co., supra, 135 U. S. 641, 660, 10 S. Ct. 965, 34 L. Ed. 295. In such case, if the condemnor does not pay the compensation awarded, he does not obtain title, and is liable for the damages sustained by the landowner. Cherokee Nation v. Kansas Railway Co., supra, 135 U. S. at 660 (10 S. Ct. 965, 34 L. Ed. 295). Certainly, if the state can lawfully authorize the courts to place the condemnor in possession of the property while the proceedings are pending and the title is still in the landowner, it can authorize the courts to enjoin the landowner from acts which will so change the character and condition of the property as to destroy its value for the public purpose for which it is desired. Of course, in either case provision must be made for the compensation of the landowner, if for any reason the condemnation fails or the land is not finally taken. 20 C. J. 970.

Complainant contends, however, and this brings us to the second point, that no adequate compensation is guaranteed for damage sustained by the granting of the injunction in case the land is not taken under the condemnation proceeding. As to this, complainant refers to the provision of the act that the state of North Carolina shall not be liable for such damages, and contends that the act makes no adequate provision for its payment. It appears, however, that the amount taken over from the Great Smoky Mountains, Inc., amounting to $460,000 in donations and subscriptions, is available for this purpose, and this takes no account of the moneys received by the commission from the Rockefeller Memorial, which, it is contended, is also available.

The act, however, does not confine the protection of the landowner, in case the injunction is granted, to the right to recover damages from the commission. On the contrary, it directs that the judge shall issue such injunction "upon such terms as may be just"; and this has been construed by the Supreme Court of North Carolina as requiring him in issuing it to protect the landowner and see that no injustice is done him. Yarborough v. North Carolina Park Commission, supra. In that case Mr. Justice Adams, speaking for the court, said:

"It is provided in section 27 that at any time after summons is issued a judge of the superior court, if of opinion that the defendant in a proceeding for condemnation is engaged, or is likely to be engaged, in an act which will change the existing condition or character of the land sought to be condemned, may issue a restraining order without bond, and that the state shall be under no obligation or liability for the payment of damages. No doubt the latter clause was inserted on the theory that the state cannot be sued without its consent; *but section 27 further provides that the restraining order shall be issued upon such terms as may be just. The obvious purpose of this provision is to protect the owner of the land and to see that no injustice is done him. The means of protection is a matter for the judge to devise.* It is subject to grave doubt whether damage is done in the sense of taking property by arresting the destruction of primitive forests until the defendant can decide whether it

will undertake to appropriate the land covered by such forests for the purposes contemplated by the statutes under consideration; but we were informed on the argument here that the defendant has stated of record that it will provide for the protection of the landowners such security as the judge may deem adequate, such as will be sufficient amply to indemnify against loss." (Italics ours.)

And later in the opinion he said:

"Until the provisions of this section [section 19] are complied with, no final order or judgment shall be entered. When they are observed and *when the judge issues his restraining order upon such terms as may be just, thereby affording ample protection against loss,* the landowner cannot complain that he is denied the equal protection of the laws or that his property is taken without due process of law in violation of the Fourteenth Amendment or of article 1, § 17, of the Constitution of North Carolina." (Italics ours.)

We are not dealing, then, with a statute which forbids the cutting of timber upon the institution of the condemnation proceedings or upon notice from the commission, but with one which authorizes a chancellor to grant an injunction to preserve the property pending condemnation upon such terms as may be just; i. e., upon such terms as will adequately protect the landowner. It is said that the provision for the issuance of the injunction is mandatory. We think, however, that the effect of the statute is to authorize the granting of the injunction only upon such terms as may be just; and, if the fund available for the payment of damages is insufficient, the judge will not grant it, unless the park commission will make provision for indemnifying the landowner against loss, in the event that it should finally decide not to take the land. As said in the Yarborough Case, the means of protection is a matter for the judge granting the injunction to devise; and we have no right to assume that, in the face of the statute and the decision of the Supreme Court, he will grant it without adequate provision for the protection of the landowner. If he should do so, the remedy of the landowner is appeal to the Supreme Court of the state, and thence, if necessary, to the Supreme Court of the United States. But what we are concerned with is the validity of the statute as interpreted by the Supreme Court of the state, assuming that it will be obeyed and that the discretion which it vests in the judge will be properly exercised. In the light of the interpretation placed upon it by the state Supreme Court, we have no doubt as to its validity.

Having reached the conclusion that the statute is not violative of the Federal Constitution, and following the decision of the Supreme Court of North Carolina that it does not violate the Constitution of the state, we shall deny the interlocutory injunction prayed. Complainant gives notice that it intends to appeal from our decision to the Supreme Court of the United States, and asks that we grant a restraining order pending the appeal; but we think that this should be denied also, as the conditions which would authorize the granting of such restraining order are entirely lacking. Virginian Ry. Co. v. U. S., 272 U. S. 658, 673, 47 S. Ct. 222, 71 L. Ed. 463. To apply the rule enunciated in the case cited, we do not entertain any serious doubt as to the correctness of our decision; there is no conflict among the courts of the several circuits as to the questions of law involved; and there is no other special reason why the park commission should be enjoined from proceeding under the act. On the contrary, we think that there are a number of reasons why we should not grant the temporary restraining order. To do so would be to hold up the acquisition of lands for the Great Smoky Mountains Park, a great public enterprise which should be of inestimable value to that section of the country as a help towards flood control and as providing a beautiful recreation park for the benefit of the people. The restraining order would enable the complainant to continue its cutting of timber and instead of preserving the status quo would result in depreciating the value of the property for the purpose for which it is desired by the public. In addition to all of this, we think that no harm can come to complainant through the refusal of the restraining order. No harm can be done by the mere institution of condemnation proceedings, which, as a matter of fact, have already been instituted. And, so far as granting a restraining order forbidding the cutting of timber on the land is concerned, the judge of the state court, as we have stated above, is authorized to grant this only on such terms as may be just and such as will properly protect complainant. Under these circumstances we do not think that it would be seemly for us to enjoin defendants from applying for an injunction to a state judge, who, if he grants the injunction, has full power to protect the rights of complainant, and is required by law to do so.

For the reasons stated, the interlocutory injunction and the temporary restraining order pending appeal will be denied, and the

temporary restraining order heretofore granted will be dissolved.

Injunction denied.