No. 3-02-0098

_________________________________________________________________

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2003

 ) 

THE DEPARTMENT OF NATURAL ) Appeal from the Circuit Court

RESOURCES OF THE STATE OF ) for the 12th Judicial Circuit,

ILLINOIS, ) Will County, Illinois

)

Plaintiff-Appellee, ) 

) Nos. 91-ED-1 and 92-ED-2

) Consolidated under 99-ED-1

) 

 ) Honorable Ludwig J. Kuhar,

JOSEPH BRAUER, LORRAINE, ) Judge, Presiding 

BRAUER, DENNIS J. BRAUER, D.J.)

BRAUER CONSTRUCTION COMPANY, )

a Partnership, and UNKNOWN )

OWNERS, )

)

Defendants-Appellants. )

_________________________________________________________________

PRESIDING JUSTICE McDADE delivered the opinion of the court:

_________________________________________________________________

This appeal arises out of a condemnation proceeding initiated against property owned by the defendants. During the 2½ years between the filing of the complaint and the adjudication of fair compensation and entry of judgment, the defendants sold utility easement rights on the property. After judgment, the State filed a motion for a setoff against the compensation award equal to the $35,000 the defendants received for the sale of the easements. The trial court granted the motion, and the defendants appeal. For the reasons that follow, we reverse.

FACTS

The defendants owned a 10.25-mile-long strip of land that was formerly a railroad right-of-way in Will County, Illinois. The parcel is 100 feet wide and runs from Joliet, south past the Village of Manhattan, to the Joliet Arsenal. All told, the abandoned railway consists of 128.25 acres. The defendants were in the business of salvaging the railroad ties and tracks from the old railway line and also made money selling easements to utility companies and municipalities. 

With the intent of turning the right-of-way into a conservation and recreation trail, the Illinois Department of Natural Resources (IDNR) filed an action to condemn the property. A trial was held, and on July 23, 2001, the jury found the defendants were entitled to just compensation in the amount of $1,154,250. The judgment on this verdict was entered on October 11, 2001.

Between the filing of the complaint on January 7, 1999, and the jury verdict on July 23, 2001, the defendants granted a series of easements on the property. The City of Joliet purchased an easement for public utilities. The defendants also granted easements to the Village of Manhattan and three private utilities so those companies could provide services to the village. At no time did the State seek an injunction to prevent the sale of the easements, for which defendants were paid $35,000.

The IDNR filed a motion to set off this $35,000 from the judgment. In response, the defendants argued that IDNR's motion was not timely filed; that they were free to do what they wished with the property until title was actually vested in the State of Illinois; that IDNR had not shown that the new easements decreased the value of the property; and that the setoff resulted in an unconstitutional taking. The trial court heard argument on the motion and ruled in favor of the State.

The defendants appeal. They raise five arguments: first, that by granting IDNR the setoff, the trial court essentially changed the valuation date of the property; second, that they had the right to deal with the property as they pleased until title actually vested in the State or until they were enjoined from doing so by the court; third, that the setoff was a modification of judgment that the court lacked jurisdiction to grant because the motion was filed more than 30 days after the judgment; fourth, that the value of the property did not decrease as a result of the easements being granted and there is, therefore, no basis for a setoff; and, fifth, that the State can file for ejectment of the easement holders and can thereby recoup the property rights that were sold by the defendants.

ANALYSIS

We are asked to determine whether the court erred in granting the setoff. Whether the State is entitled to the setoff is a question of law, which we review 
de novo
. 
Woods v. Cole
, 181 Ill. 2d 512, 516, 693 N.E.2d 333, 335 (1998). 

We first consider whether the trial court had jurisdiction to award the setoff. The record shows that the order setting fair compensation was filed on October 11, 2001. Since the State's October 3, 2001, motion for setoff was filed prior to the judgment, the court had jurisdiction to hear the motion. We reject the defendants' claim of untimeliness.

We next turn to the merits of defendants' claims on appeal. When the State filed its action for condemnation, its rights to the property became fixed. 
Board of Junior College District
, 504
 v. Carey
, 43 Ill. 2d 82, 85, 250 N.E.2d 644, 646 (1969). Also fixed at that time was the value of the property, which serves as the basis for the jury award of just compensation. 
Carey
, 43 Ill. 2d at 85, 250 N.E.2d at 646. Title does not vest, however, until the determination and payment of just compensation. 
Carey
, 43 Ill. 2d at 84, 250 N.E.2d at 646
. Just compensation is equal to the fair cash market value of the property for its highest and best use. 
Department of Public Works & Buildings v. Oberlaender
, 42 Ill. 2d 410, 415, 247 N.E.2d 888, 892 (1969). The fair cash market value of the property is the price for which the land would sell under ordinary circumstances; that is, if there were a willing seller and buyer who were under no compulsion to engage in the transaction. (735 ILCS 5/7-121 (West 2002).

The State has produced no law that establishes a right to the requested setoff. In condemnation proceedings, it is the State's burden to prove the fair market value of the property. 
Department of Transportation v. White
, 264 Ill. App. 3d 145, 150, 636 N.E.2d 1204, 1208 (1994). Here, since the State is the party seeking
 to reduce the jury's compensation award, it should also have the burden of proving a decrease in value due to the easement sales. 

The State has presented no evidence that indicates that the value of the property for its intended use decreased due to the granting of the easements. Nor has the State shown that the existence of the easements is relevant to the valuation of the property. We believe it was improper for the trial court to grant the setoff in the amount of $35,000. Although the defendants were able to sell the easements for that amount, it does not follow and, more importantly, has not been demonstrated that the value of the property decreased accordingly.

The State argues, however, that whether there is or is not a change in value of the property is irrelevant to the determination of whether it is entitled to a setoff, claiming that the relevant fact is that it has been denied property rights to which it was entitled. The State has produced no case law in support of this proposition, nor offered any compelling argument for ignoring the plain language of the statute, which measures compensation in terms of value. (735 ILCS 5/7--121 (West 2002). 

The dissent tries to bolster the State, contending that, "the sale of an easement 
can
 lessen the value of the land." (Emphasis added.) Slip op. at 2.  While true, the statement only acquires legal significance if the claim of a reduction in value is supported by evidence. As we have noted, there is no such evidence in the record.

The dissent also discusses the allocation of the risk of loss as between condemnor and condemnee, citing section 1009 of the Uniform Eminent Domain Act (Uniform Eminent Domain Act, 13 U.L.A 100 (2002)), to show that the condemnee (defendant) has the risk of loss "due to damage, destruction, or unauthorized removal of improvements or crops situated on the property." 13 U.L.A. 100 (2002)  Defendants' sale of the easements is characterized as "deliberate" and "unauthorized." "Without leave of court or the DNR's authorization," the dissent reports, "the defendants sold valuable rights in the property." Slip op. at 6.  The problem with this argument is that the Uniform Eminent Domain Act does not require leave or authorization to sell easements; defendant may use the property for any lawful purpose "unless the court otherwise directs." 13 U.L.A. 100 (2002).  The State did not seek and the court did not enter an order barring defendants from selling easements, even though that had been a part of their ongoing use of the property.

The State also argues that it possesses "the right to obtain title to the land according to the state of title as of [the date of valuation] and at the valuation of the land at that time, and interests which may be acquired thereafter in the land by another are subject to the pending proceedings and are to be considered subordinate to the rights of the condemnor." 
Carey
, 43 Ill 2d at 85, 250 N.E.2d at 646. While it is true that the rights of the purchasers of the easements are subordinate to those of the State, it is also irrelevant. This rule only describes the relationship between the State and the easement purchasers and has nothing to do with the relationship between the State and the Brauers. Whether or not the State can, or will want to, extinguish the rights of the easement holders is irrelevant to the question of whether the State is entitled to a setoff for the price of the easements.

Finally, the State argues that the Brauers would be unjustly enriched if they were allowed to keep the proceeds from the sale of the easements in addition to the entire compensation award. The State claims that this is improper under Illinois law because it constitutes double compensation for a single injury. 
Klier v. Siegel
, 200 Ill. App. 3d 121, 127, 558 N.E.2d 583, 588 (1990). The State has not, however, established that the Brauers are receiving double compensation. Compensation is based on the value of the property. If the value of the property had been decreased by the granting of the easement, the State might have an argument for unjust enrichment. In fact, there is no indication that the value of the property itself has changed at all. 

Lastly, we note that the State was free to abandon the condemnation at any time and for any reason prior to the vesting of title. 735 ILCS 5/7--123 (West 2002); 
Department of Transportation v. Veach Oil Co.
, 22 Ill. App. 3d 229, 231, 317 N.E.2d 404, 405 (1974). If we were to adopt the rule the State urges, the owner of a property being condemned would be prevented from gainfully using the property from the time of the filing of the action until the payment of compensation. At the same time, the owner would have no assurances that the transaction would be completed and compensation would ever be forthcoming. That would place the defendants in the uncomfortable and unfair position of passing up valuable business opportunities because of the uncertainty created by the condemnation proceeding. In this case, it was 2½ years between the filing of the action and the jury award. The condemnees should not be prevented from continuing to make a living on the land during that time so long as their activities do not diminish the intrinsic value of the land for its proposed purpose. Justice seems to dictate such a conclusion since the State remains free to abandon the take at any time prior to vesting. 

CONCLUSION

The State has produced no law to support its position that it was entitled to the setoff granted by the trial court in its favor. The law of eminent domain requires that just compensation for a taking equal the fair cash value of the property. Since compensation is tied to valuation, the State must show a decrease in value to warrant a setoff against the compensation award. We do not find that it has done so. The granting of the setoff, without proof of a decrease in value was improper, and we therefore reverse the trial court's order awarding the State the $35,000 setoff.

Reversed. 

SLATER, J., concurs.

LYTTON, J., dissents. 

JUSTICE LYTTON, dissenting:

_________________________________________________________________

It is important to understand what happened here.  After the complaint was filed, after discovery, after trial, and after a judgment setting the fair cash market value of the land, it was revealed that defendants sold off valuable easement rights in the property.  The sale of these easements, like any other valuable asset in the land, depreciated its value.

1.

The Illinois Constitution and the Eminent Domain Act both provide for "just compensation" for the taking of private property.  Ill. Const. art. I, 815; 735 ILCS 5/7-101 (West & Supp. 2002).  The measurement of just compensation is, in most cases, the property's fair cash market value.  Fair cash market value is defined as the "highest and best use upon the date that the condemnation petition is filed" (
City of Chicago v. Giedraitis
, 14 Ill.2d 45, 49 (1958)), and is "the amount of money necessary to put [the property owner] in as good condition financially as he was with the ownership of the property."  
Housing Authority of East St. Louis v. Kosydor
, 17 Ill.2d 602, 605-06 (1959).

In a condemnation, the land is valued as a whole, not by its constituent parts.  735 ILCS 5/7-121 (West 1992).  
Department of Transportation v. Farnsworth
, 273 Ill. App. 3d 631 (1993).  For example, in valuing land containing mineral deposits, the court does not value the minerals separately from the value of the land without the minerals.  See 
Department of Public Works and Buildings v. Oberlaender
, 42 Ill. 2d 410, 415-16 (1969);  
Farnsworth
, 273 Ill. App. 3d at 633 (citing the "unit rule" for valuing land).  The same rule applies to timber or crops.  
Forest Preserve District v. Caraher
, 299 Ill. 11 (1921); 
Peoria, Bloomington & Champaign Traction Co. v. Vance
, 234 Ill. 36 (1908).  Thus, while the existence of mineral deposits, timber or crops are considered in valuing the property and may increase its fair cash market value, they are not valued separately from the whole.  
Oberlaender
, 42 Ill. 2d at 415-16.    

Easements constitute a valuable interest in the land.  See 
Super-Power Co. v. Sommers
, 352 Ill. 610, 618 (1933);  
Illinois Power and Light Corp. v. Peterson
, 322 Ill. 342, 349 (1926).  The sale of an easement can lessen the value of the land.  See 
Illinois Power & Light v. Barnett
, 338 Ill. 499 (1930) (above ground power lines); 
Peoples Gas Light & Coke Co. v. Buckles
, 24 Ill. 2d 520, 531 (1962) (underground gas storage); Illinois Pattern Jury Instructions Civil No. 300.18, comment (West 2000).

2.

Ordinarily, the date of valuation in a condemnation is the date of the filing of the action.  
Department of Transportation v. LaSalle National Bank
, 102 Ill. App. 3d 1093 (1981).  The general rule fixing the date for valuation of the property as the date of the filing of the petition operates to prevent "unjust enrichment or an unfair penalization of property owners" due to fluctuations in the value of the property after the petition was filed.  
LaSalle National Bank
, 102 Ill. App. 3d, at 1095.  Valuation on the filing date also helps prevent fluctuations in value due to the condemnation itself.  See generally 
Chicago v. Blanton
, 15 Ill. 2d 198 (1958).

While a defendant in a condemnation action continues to have ordinary use of property after the commencement of the proceedings, the owner cannot make substantial changes in the condition of the property which lowers the value of the real estate.  
Suncrest v. North Carolina Park Commission
, 30 F.2d 121 (W.D.N.C. 1929).  The land is valued at the date of the filing of the action, and the right to compensation rests in the condemnee on the filing date.  Acts occurring after filing may, under certain circumstances, be considered to mitigate damages.  See, for example, 
Michigan State Highway Commission v. Davis
, 38 Mich. App. 674, 197 N.W.2d 71 (1972) (evidence allowed in quick take of lesser damages because of a lesser taking);  
In re Briggs Avenue
, 196 N.Y. 255, 89 N.E. 814, 815 (1909) ("[w]hen the property is taken, the compensation should be just to the owner, but it should also be just to the public.  Good faith should be exercised by all parties affected by the enforced intervening time during the pendency of the proceeding.");  
People ex rel Canavan v. Collis
, 46 N.Y.S. 727, 730 (1897) (condemnee changing the nature of the land is equivalent to waste and cannot be permitted).  
 

The mere recitation of the general rule for fixing value is an insufficient analysis. Rules fixing the date of compensation are intended to set a time that gives complete and full indemnification to a condemnee.  It gives a measure of certainty to both parties and supports the intent of just compensation, i.e., putting the owner "in as good financial condition as he was" when the property was condemned.  
Buckles
, 24 Ill. 2d at 531.  However, just compensation does not mean that owners can receive an additional return on their investment.  While the condemnor cannot take undue advantage of the condition of the land, neither can the owner unfairly profit therefrom.  
United States ex rel Tennessee Valley Authority v. Powelson
, 319 U.S. 266, 87 L.Ed 1390, 63 S. Ct. 1047 (1943).

The general rule prevents unjust enrichment or penalization of both parties.  If a party acts in a way that causes an unjust enrichment and penalizes the other party, restitution must be made to provide equity and to balance both parties' interests.  See 
In re Briggs Ave.
, 196 N.Y. 255, 89 N.E. 814 (1909).

3.

This conclusion is buttressed by cases focusing on the risk of loss involving intentional, accidental or negligent damage to the property after the original valuation date, but before title passes to the condemnor.  In Illinois, title does not pass to the Department of Natural Resources (DNR) until the deposit of the funds into the county treasurer's office.  See 
Foss Park District v. First National Bank of Waukegan
, 9 Ill. App. 3d 560 (1973); 735 ILCS 7/5-127 (West 1992).  

Until title passes, the risk of loss falls upon the condemnee. The Uniform Eminent Domain Code agrees:

"(a) Unless the court otherwise directs, the defendant may use the property sought to be taken for any lawful purpose before the date on which the plaintiff is authorized to take possession. *** 

(b) As between the plaintiff and defendant, the defendant has the risk of loss due to damage, destruction, or unauthorized removal of improvements or crops situated upon the property until the earliest of (1) the date after which, by order of the court, the defendant's right to use the property is substantially limited or forbidden; (2) the date upon which the DNR is authorized to take possession; or (3) the date upon which title is transferred to the DNR."  Uniform Eminent Domain Act (U.L.A.) § 1009 (2002).

Section 1009 makes logical and common sense.  "In effect, the risk of loss follows the right to use."  Uniform Eminent Domain Code, §1009(b), comment.  It is also good policy.  See 
Ford v. Bowling Green
, 780 S.W.2d 613 (Ky. 1989); 
Redevelopment Agency of San Francisco v. Maxwell
, 193 Cal. App. 2d 414, 14 Cal Rptr. 170 (1961) (following the general rule, leaving "risk with owner who retains both title and possession"); 
In re Hudson Toll Bridge
, 142 N.Y.S, 949, 81 Misc. 324 (1913) (events occurring prior to actual divesting of title may be to the detriment of owner where such facts show a reduction of value);  
Farmer v. Hooksett
, 28 N.H. 244 (1854) (same). 

Here, the defendants retained title to the real estate; their right to use the property was not limited in any way by statute or court order.  Title had not passed and the DNR had not entered on or possessed the land in any way.  The defendants had enough possession and control, certainly, to sell valuable easement rights on the property prior to the DNR taking title.

Moreover, the defendant's act was purposeful and intentional.  No fire or earthquake reduced the value of the land.  The burden of the loss of property value is on the condemnee, most particularly any loss caused by the condemnee's deliberate, unauthorized acts.

Without leave of court or the DNR's authorization, the defendants sold valuable rights in the property.  The resulting reduction in value of the property has to be charged to the defendants. 

The general legal principles of risk of loss certainly apply to the purposeful acts of a condemnee that reduce the value of the property prior to the transfer of title.  More pointedly, when a vendor reduces the value of the property by acts amounting to waste during a contract's executory period, the reduction of the value must be borne by the vendor.  See 
Bliss v. Carter
, 26 Mich. App. 177, 182 N.W.2d 54 (1970).

5.

Ordinarily, the measure of damages for such loss would be the property's value prior to the sale of the easements measured against its value after the sale.  However, because the acts of the defendants causing the lost value were deliberate, I believe full restitution of defendants' gain is appropriate.  See 
May v. Muroff
, 483 So. 2d 772 (Fla. App. 1986); 
Laurin v. DeCarolis Construction
, 363 N.E. 2d 675 (Mass. 1977).  The DNR should receive restitution for that loss, just as surely as if any other kind of waste had been committed upon the property.  The defendants' profit from the sales should be deducted from the award, and the monies awarded to the DNR.  
Lombard v. Chicago Sinai Congregation
, 64 Ill. 477, 486 (l872). (where real property destroyed by fire, vendor's wilful, prejudicial acts entitled purchaser to full deduction of damages from his purchase money).

 6.

The verdict in this case was for $1,154,250.  If easements had been sold for a million dollars instead of $35,000, would the majority still argue that there was no unjust enrichment?  The majority's decision encourages condemnees to unfairly profit from a condemnation, selling off timber, mineral rights, and easements.

The intentional acts of the defendants devaluing the property cannot fit under the general rule fixing the valuation date.  See 
Suncrest
, 30 F.2d at 128.  Defendants must not gain financially from actions that reduce the value of the land from the fair cash market value determined on the filing date.  The DNR must have recompense for its loss.  Therefore, I would affirm the decision of the trial court.